ALICE S. H. DAVIES AND OTHERS, EXECUTORS, *vs.* JOHN M. DAVIES AND OTHERS.

55  319
71  291

New Haven Co., Dec. T., 1886. PARK, C. J., CARPENTER, PARDEE, LOOMIS and GRANGER, Js.

A testator, after making certain bequests, divided his property equally among all his children, with a provision that one fifth of the share of each son should be invested for his use during his life and the income paid him, and that on his death it should be " distributed or go to his personal representatives who would be entitled to his personal estate according to law." One of the sons died leaving a widow, to whom by his will he gave all his property. Held—

1. That the title to the fifth had not vested in the son, and that his widow therefore could not take it under his will.

2. That the personal representatives of the son took it under the will of the father.

3. That his widow could not take a part of it as a distributee of half his personal estate if he had died intestate, and as thus coming within the terms of the will.

4. That by the "personal representatives" of the son was meant his next of kin, and that they alone could take.

[Argued December 7th, 1886—decided February 11th, 1887.)

SUIT to obtain a construction of the will of John M. Davies, deceased; brought to the Superior Court in New Haven County, and reserved, upon facts admitted, for the advice of this court. The article of the will under which the questions arose is given, with the facts, in the prevailing opinion, and certain other parts of the will in the dissenting opinion.

*C. H. Farnam*, for the executors.

*J. S. Beach*, for the defendant Grace W. Davies.

1. If Cornelius Davies had died intestate, one half of his personal estate would, under the distribution laws both of Connecticut and of New York, go to his widow. Gen. Stat. of Conn., p. 373, § 8 ; Rev. Stat. of N. Y., vol. 2, p. 159, § 79. Under these laws, if he had died intestate, his widow would have been entitled to one half of this one fifth share held in trust, unless she is excluded from any distributive share therein, under the claim that she is not a "personal representative" of her deceased husband. We must bear in mind, while discussing this question, that we are not dealing with real estate, and with the title of heirs-at-law to such estate, but we are dealing with personal estate, and the rights of those who represent an intestate in the distribution of personal property. It is to be noted that the term "heirs" is not to be found in the will of John M. Davies. He intended that the rules of law governing the distribution of any portion of his property should, if any necessity arose for the application of those rules, be the rules governing the distribution of personal property, and not the laws prescribing the division of real estate among heirs. This is entirely

clear from the provisions with regard to the shares of the daughters. We stand, then, on solid rock, in asserting that the intent and meaning of the testator was, that in the event of either of his sons dying without children, intestate, the rules governing the distribution of personal estate should control the distribution of his share of the estate, and not the rules governing the division of real estate. But this is not a topic for argument. The testator, in this very ninth article, has told us in so many words that his intent and meaning in such an event was and is that the share of the deceased son shall be distributed as "personal estate"—"shall be distributed or go to his personal representatives who would be entitled to his personal estate according to law." If, therefore, Cornelius Davies had died intestate, there would seem to be no question but that his widow would have been entitled to one half of this sum of $33,333. But he did not die intestate. He left a valid will, giving all his property to his widow. It will hardly be claimed that the effect of such a will could be to extinguish or diminish any of the rights of the widow in the estate of her deceased husband to which she would have been entitled if there had been no will. The office of a will is to set aside the distribution which the law prescribes for intestate estates and to substitute a mode of distribution more in accord with the testator's wishes. There can be no question but that it was the intent and meaning of his will that his wife should take his entire estate, including this fund of $33,333, to the exclusion of his brothers and sisters. Our only enquiry, therefore, as it seems to us, is, whether there is anything in the law which will prevent the court from advising the executors to carry out that clear intent and meaning. This enquiry carries us back again to the will of John M. Davies, and we are there told that this $33,333 "shall be distributed and go to the personal representatives of Cornelius C. Davies, who would be entitled to his personal estate according to law." Certainly the law does not exclude the wife from the circle of "personal representatives" of her deceased husband. On the contrary the law recognizes her as being within that

circle. And as being such a personal representative, it enacts, in the event of her husband dying intestate, leaving no children, that she shall represent in her person, and through her personality, one half of his personal property.

2. There is another aspect of this case which leads us to the same result by a shorter path. The petition refers to this $33,333 as a " trust fund," and thus far we have spoken of it under the same title. But it is not a trust fund in the ordinary sense of that term. Neither of the words " trust " or " trustee " is used in this carefully drawn will. The distributive share of Cornelius Davies, under his father's will, was $166,666 ; of this amount four fifths, being $133,333, was paid over to him, and one fifth, $33,333, was not paid over to him, but was retained by the executors under the ninth article of the will. All executors are, to a certain extent, trustees. These executors were trustees of the $133,333, being the four fifths share of Cornelius Davies, until they paid it over to him. They continued to be trustees of his remaining one fifth share during his life. But his title to his one fifth part of this share so distributed to him was as good as his title to his four fifths part of that share. The time of its payment was deferred until his death, and then it was to go to those who should represent him ; if he should die intestate, to those who would represent him under the statute law ; and if he died testate, to those whom he should by his will select as his personal representatives. We submit that the representative of his person, and of his rights of property in this personal estate, is the legatee under his will, and not his next of kin. This case is to be determined by the manifest intention of the testator, John M. Davies, as gathered from the will itself, and not by any arbitrary rule of law ; but if the counsel for the next of kin shall present it as one to be governed by some one or more of the numerous conflicting authorities which seek to determine the will of a testator by the application of such arbitrary rules of law, then we say that the weight of authority is that under a bequest to one for his use during life, and upon his decease to his personal representatives, the personal

estate so bequeathed goes to the executors of the deceased legatee, to be by them distributed as he by will shall have directed. 2 Redfield on Wills, 80 ; Theobald on Wills, 260.

*C. R. Ingersoll*, for the defendants, who were next of kin, cited—2 Jarman on Wills, 111 ; 2 Redf. on Wills, 78 ; *Palin* v. *Hills*, 1 Mylne & K., 470 ; *Baines* v. *Otter*, id., 465 ; *Bridge* v. *Abbot*, 3 Bro. C. C., 224 ; *Cotton* v. *Cotton*, 2 Beav., 67 ; *Booth* v. *Vicars*, 1 Coll., 6 ; *Robinson* v. *Smith*, 6 Sim., 47 ; *Walter* v. *Makin*, id., 148 ; *Smith* v. *Palmer*, 7 Hare, 225 ; *King* v. *Cleveland*, 4 DeG. & J., 487 ; *In re Grylls Trusts*, L. R., 6 Eq., 589 ; *Briggs* v. *Upton*, L. R., 7 Ch. App., 376 ; *Drake* v. *Pell*, 3 Edw. Ch., 270 ; *Watson* v. *Bonney*, 2 Sandf., 405, 417 ; *Tillman* v. *Davis*, 95 N. York, 17 ; *Brokaw* v. *Hudson's Exrs.*, 27 N. Jer. Eq., 135.

PARK, C. J. The ninth article of the will of the late John M. Davies is as follows : " It is my will, and I hereby direct, that four fifths of the share of any and every of my sons shall be paid to him as soon as it can be conveniently done after my decease ; and as to the remaining one fifth, it is my will and I hereby direct that the same be invested in bonds and mortgages, or if it shall be thought best by my executrix and executors in real estate, and kept invested for his use during his life, and that the interest and income therefrom shall be paid to him during his life, and that on his death the same shall be distributed or go to his personal representatives who would be entitled to his personal estate according to law."

The testator left three sons surviving him at the time of his death, who were all of age when the will was made. The share of each in his estate was $166,666, of which the one fifth in question in this case is $33.333.

One of the sons, Cornelius C. Davies, has since died, leaving a will, and a widow, Grace Welch Davies, one of the defendants, but no issue. By the will he gave all his property, both real and personal, to his widow, and constituted her the executrix of his will.

The executors of the will of John M. Davies present to this court the following questions for our advice.

1st. Who are the personal representatives of Cornelius C. Davies intended by the testator in the ninth article of his will?

2d. To whom is it the duty of the plaintiff to deliver the estate now in their hands, under the trust of said ninth article?—to the defendants who are the heirs at law of said John M. Davies and the next of kin of said Cornelius C. Davies, or to the defendant Grace Welch Davies, who is the executrix and sole devisee and legatee under the will of said Cornelius; or to the defendant Grace W. Davies as the widow, and the other defendants as the legal representatives of said Cornelius, in proportions according to the statute of distributions of this state relating to intestate estate?

The ultimate gift of the property in question was made to the "personal representatives" of Cornelius C. Davies, "who would be entitled to his personal estate according to law." We think this description was not intended to describe parties who might represent Cornelius in an official capacity as executors or administrators; neither was it intended for those who might be his devisees or legatees; but was intended to designate his next of kin, who would be entitled to his personal estate by right of consanguinity.

We think it clear that the testator never intended by this description that those should enjoy his bounty who might happen to be Cornelius's executors or administrators, to the exclusion of his children should he leave any surviving him. The improbability of such a gift to those who might not only be strangers to the blood of the testator, but strangers to him personally,—strangers who might come within the description by the accident of appointment by Cornelius as executors of his will or by the probate court as administrators of his estate, would be so great that it would require unequivocal language to establish it. As said the Lord Chancellor in *Palin* v. *Hills*, 1 Mylne & K., 470,—"If by personal or legal representatives, or executors or adminis-

trators, we suppose the testator to mean those whom the legatee might appoint executors, or those to whom the Ecclesiastical court might give administration, we presume a great improbability, to wit., that he should leave it to the choice of another, or the accident of a grant of administration, to determine in what channel his bounty should flow."

Such a gift would have put it in the power of Cornelius to make a disposition of the property, in effect, to whomsoever he would, for he could select whatever party or parties he might feel disposed to be his executor or executors, and he might make the selection in order that others might have the property, to the exclusion of his children.

All this he might do when no power of appointment has been given to him directly in the will, and no such power has been given unless intentionally given in the indirect manner suggested. This seems preposterous; and especially so when we consider that the testator granted the power of appointment in the sixth and tenth articles of his will to his widow in one case and to his daughters in the other, and the grants are made in clear and direct terms. The conclusion is irresistible, that if the testator had intended that the sons should have this power, the grant would have been made in equally explicit and direct language.

Again, the cases are numerous, both in England and in this country, where the words "personal or legal representatives," when used by a testator to describe the objects of his bounty, have been construed to mean natural representatives and not legal representatives—representatives in the sense of next of kin, and not representatives in an official or fiduciary capacity.

In the old and leading cases of *Bridge* v. *Abbott*, 3 Bro. C. C., 224, and *Cotton* v. *Cotton*, 2 Beav., 67, the gift was to certain devisees, and in case of the death of either, then to his or her "legal representatives." And in the latter case one of the devisees had died leaving a will. But the master of the rolls held that the next of kin in both cases

were entitled to take as the representatives intended by the testator. In *Baines* v. *Ottey*,, 1 Mylne & K., 465, the trust was for *M. K.* for life, with remainder as she should appoint, and in default of appointment in trust to transfer and assign the personal estate to and among such person or persons as would be the personal representatives of *M. K.* These words of distribution were held sufficient to show that the executors were not intended, but that persons who could take beneficially must be the parties intended. In *Robinson* v. *Smith*, 6 Sim., 47, the trust was for the life of a daughter, and after her decease to pay the trust moneys to such persons as she should by will appoint, and in default of appointment to her "personal representatives." The next of kin were regarded as the persons intended. To the same effect is *Walter* v. *Makin*, 6 Sim., 148. In *Smith* v. *Palmer*, 7 Hare, 225, and *King* v. *Cleveland*, 4 De G. & J., 477, a direction for a distribution among "legal representatives" was held to mean the next of kin. In *In re Grylls' Trusts*, L. R., 6 Eq., 589, a legacy was given in trust for a married daughter for life, with power of appointment, and in default of appointment to transfer the same to such persons as would be her "personal representatives" in case she had died sole and unmarried. The vice-chancellor said:—"It is a most improbable thing that the testator meant his daughter's executor or administrator to take beneficially." The next of kin took the property. In *Briggs* v. *Upton*, L. R., 7 Ch. App., 376, the marriage settlement was in trust for the life of the wife, with power of appointment, "and in default of such direction or appointment, then upon trust to pay or transfer the trust moneys unto the legal representatives of the said *J. B.* in a due course of administration." It was urged that these words, "in due course of administration," indicated the executors as the legal representatives, but the lord chancellor said:—"I do not think that to be the natural meaning of the words. The natural meaning of the words would be that the trustees were to pay it over to those who in a due course of administration beneficially represented him, and that of course would

bring in the statute with reference to the administration of intestate estates."

In this country the English cases, giving to "representatives" the significance of "next of kin," have been generally followed. 2 Redfield on Wills, 78. Such has been particularly the case in the state of New York, where the will in question was executed, and in reference to whose laws, presumably, it was made.

The case of *Drake* v. *Pell*, 3 Edw. Ch., 270, is a leading one in that state. The bequest was of personal property in trust for the benefit of nine children of the testator, with this provision, "and in case any of my said children shall die after me under the age of twenty-one years, and leaving a child or children him or her surviving, then the share, portion or interest of the child so dying shall go to the heirs, devisees or legal representatives of the child so dying." One of the sons died a minor and intestate, leaving a widow and two children; and the question was whether the son's adminstrator took as his legal representative, or his children, as his next of kin. In deciding the question the court say:—"And with respect to the words 'legal representatives,' if the property transmitted be personal estate, the persons desiginated by and answering to this description are those who, by the statute of distributions, are known as the next of kin, and not the executors or administrators of the deceased child. The testator doubtless meant those who should take beneficially to themselves as owners, and not in a mere official or representative capacity in the right of a deceased child." The two grandchildren of the testator were declared to be the parties described to take under the will, and the mother of the children to be entitled to no interest in the property.

The case of *Tillman* v. *Davis*, 95 N. York, 17, fully and clearly shows that the law of New York excludes the widow and husband from the class of "next of kin" in personal property and from "heirs" in real estate. In that case the testatrix gave property to her executors in trust for the use of her husband during life, and then directed its division

into a number of shares, each of which she gave to a benefi-
ciary, and then the will provided that " the heirs of any or
either of the foregoing persons who may die before my
husband, to take the share which the person or persons so
dying would have taken if living." One of the persons
died in the lifetime of the husband, leaving a widow, to
whom by his will he gave all his property. The court
held that the widow took nothing by her husband's devise
to her, but that his heirs took by substitition under the origi-
nal will. It was also held that the word " heirs " was to be
construed as " next of kin," which did not include the
widow.

The word " representatives " has also been regarded as
meaning "next of kin " in *Brokaw* v. *Hudson's Executors*, 27
N. Jer. Eq., 135. In this case the gift was made to the testa-
tor's sister " or to her representatives." The court say :— "In
a gift of personal property, where the substitutes of the
primary legatee are described by the word ' representatives,'
those will take who have the right to represent the primary
legatee as next of kin under the statute of distributions, and
not his executors or administrators."

But we think, aside from the adjudged cases on the sub-
ject, that the language of the description of the parties
who are to take the remainder of the property in question,
clearly excludes both the executors and administrators of
Cornelius C. Davies and his legatee and widow. The lan-
guage is :—" Shall be distributed and go to the personal repre-
sentatives of Cornelius C. Davies, who would be entitled to
his personal estate according to law." The last words, we
think, make it clear that the testator meant by " personal
representatives " those who would be entitled to the personal
estate of Cornelius by right of consanguinity; that is, who
would be entitled by natural right—by relationship—by
being next of kin.

But it is said that the title to the one fifth share of
Cornelius C. Davies was vested in him as much as the title
to the four fifths, and consequently that he had the right to
dispose of it by will, as he did to his wife.

But John M. Davies, the original testator, disposed of the title to the one fifth to the next of kin of Cornelius, as we have seen; how then could Cornelius convey it to another party? He had no power of appointment. He had only the interest and income of the one fifth. This is as clear as language could make it. The testator manifestly intended to put so much of the share of Cornelius beyond the reach of his creditors, in case financial disaster should befall him. There could have been no other object in view in regard to the one fifth. The testator said in effect in his will—come what may, so much shall be saved from the wreck of Cornelius's estate, for his support, and for the benefit of his next of kin.

We therefore, in answer to the questions propounded by the executors for our advice, say that the personal representatives of Cornelius C. Davies are his next of kin; and that the property in question should be delivered to the defendants who are the heirs at law of John M. Davies and the next of kin of Cornelius C. Davies.

In this opinion PARDEE and LOOMIS, Js., concurred.

CARPENTER, J., (dissenting.) The testator disposed of the residue of his property as follows: "*Seventh.* It is my will and I hereby direct that all the rest, residue and remainder of my estate, real and personal, and effects whatsoever, shall be divided in equal portions among my children who shall survive me, and the children of such of them as shall die leaving children, if any, so that each of my children who survive me shall have an equal portion of my estate if all shall survive me, or if any shall have died before my decease without leaving a child or children; and so that if any of my children shall have died before my decease leaving a child or children, the child or children of each and every one who shall have died before my decease, shall take the share which the father or mother would have taken under this my will, if such father or mother had survived me."

Clearly the leading thought and intent in this section is

that his children shall share his property equally. There is no intimation of a contrary intention. He is careful to provide that the issue of each child dying before his own decease shall take the share which the parent would have taken if living. He first divides the property among his children "in equal portions"; and then to emphasize that intent he repeats: "So that each of my children who survive me shall have an equal portion of my estate."

It will be observed that the gift to each and every one of his children is in precisely the same language. There is no distinction. If one takes a fee, all take a fee, so far as this section is concerned. That will be admitted. The court cannot construe the same language as meaning one thing in respect to one child, and something different in respect to another. If, therefore, such a construction is to prevail, it must be on account of some other portion of the will which requires it.

The ninth section is as follows: "It is my will, and I hereby direct, that four fifths of the share of any and every of my sons shall be paid to him as soon as it can be conveniently done after my decease. And as to the remaining one fifth, it is my will, and I hereby direct, that the same be invested in bonds and mortgages, or, if it shall be thought best by my executrix and executors, in real estate, and kept invested for his use during his life, and that the interest and income therefrom shall be paid to him during his life, and that on his death the same shall be distributed or go to his personal representatives who would be entitled to his personal estate according to law."

The tenth section makes a similar provision for the shares of the daughters, except that the proportions are reversed, one fifth being payable presently to each daughter, and four fifths invested for her use during life, and at her decease, and not before, "the said four fifths of her share shall go to her child or children, if she shall leave any surviving her, share and share alike if more than one, and so that the children of any deceased child shall receive the share that the parent would have been entitled to if living; and if not, that is, if she shall leave no child nor descendant, shall be

distributed as her personal estate according to law or as she shall by her will direct and appoint." And in case any one of his daughters should die after his own decease, and before the payment to her of said one fifth, or before said four fifths shall have been invested for her as directed, then the direction is that "so much of such one fifth or increase as shall not have been actually paid to her, or so much of the amount herein directed to be invested as shall not have been actually invested for her use, shall go and be distributed as the personal estate of such daughter, as in case of intestacy, according to the provisions of the statutes of the state of New York regulating the distribution of the personal estates of intestates, *to the absolute exclusion of any right, claim or interest therein or in any part thereof of any husband as her administrator or otherwise.*"

It will be found that the portion given to each daughter in the seventh section is spoken of as "her share" in his estate no less than seven times in the tenth section. She has the beneficial use of the whole share during her life, the power of disposing of it by will is expressly given her, and, in case she makes no will, it is to be disposed of as her personal estate.

Under such a will I think it will be admitted that each daughter, in effect, takes a fee in the whole portion given to her by the seventh section.

I fail to discover enough in the difference between the ninth and tenth sections to convince me that the testator intended to deal less favorably with the sons than with the daughters. That difference may be accounted for mainly, if not entirely, by his extreme anxiety that each daughter, when married, should take her share as her sole and separate estate and have the power of disposing of it to the "absolute exclusion" of any right in the husband. In case she fails to dispose of it, the provision that it shall be distributed as her personal estate is significant; he thereby recognizes not only that the property vests in the daughter, but also that it is hers, and not her husband's.

No part of the will indicates any want of confidence in

the sons. Two of them are made executors, and in the twelfth section the testator speaks as follows:—" It is my desire that my three sons should carry on business together in copartnership, believing that they are well constituted with the blessing of God to make a strong and prosperous firm, and in connection with my present partner and friend, Mr. Gopsil, and that they should continue the name of the old firm of John M. Davies & Co."

The suggestion that he intended to place one fifth of each son's share beyond the hazards of business is hardly in harmony with other parts of the will. It may be so, but he has not said so, and no such reason for withholding payment of the one fifth is apparent either on the face of the will or in the attending circumstances. Besides, if it had been his intention to give but a life estate to his sons in any portion of his property, we should expect to find, in a will so intelligently drawn as this is, that intention clearly expressed. We should not expect to find it only by implication, and a rather weak implication at that. Moreover, that construction partially defeats the leading intention of the will by effecting an ultimate unequal distribution of the property.

But the ninth section, aside from the argument drawn from the tenth, may be fairly construed as I contend it should be. Its object is not to devise or bequeath property, but to fix a time for the payment of legacies already given. Hence the testator speaks of " the share of any and every of my sons "; four fifths of that share is payable at his decease; and on the death of the legatee the other fifth is not in terms given to his personal representatives, but " shall be distributed or go to " them. They are to take, not as purchasers, for that would make the ninth section to some extent repugnant to the seventh. That would limit a remainder upon a fee. That is allowable in a will, the remainder taking effect as an executory devise, when such an intention is clearly expressed. If doubtful, and the language will admit of another rational construction, the latter should be preferred as the true one.

Sometimes the gift of a remainder after a fee will be re-

garded as repugnant and void. There is not necessarily any repugnancy here, and I contend that the will should not be so construed as to make one; neither should it be so construed as to reduce an estate previously given in fee to a life estate unless such an intention is clear, and I think no such intention appears in this case.

There is no gift or devise in this section except by implication, and such implication need not be resorted to in order to discover the testator's intention, as that intention is reasonably clear without it. Bearing in mind that the testator is simply providing for the payment of a portion of a legacy previously given, at the death of the legatee, there is no difficulty in perceiving that by " personal representatives " he meant those who should represent or succeed the son in the ownership of the property. That construction avoids repugnancy, does not reduce a fee to a life estate, and gives effect to the testator's intention.

I am aware that there are decisions in England and in this country which hold that a gift to personal representatives is a gift to the next of kin. I have no occasion to controvert that rule ; but like all other arbitrary rules it should be sparingly used, and never when it tends to defeat the intention of the testator. But as I construe this will the rule has no application to this case, as here is no gift to personal representatives, but a time is named when a portion of a gift previously given is payable ; and as that time is after the death of the legatee, the testator naturally speaks of those who succeed to his rights in property wholly personal as personal representatives.

In this opinion GRANGER, J., concurred.