Kermit STERNS and Geraldeen Sterns, Plaintiffs-Appellants,

v.

M. F. A. MUTUAL INSURANCE COMPANY, a Missouri corporation, Defendant-Respondent.

Kermit STERNS, Administrator of the Estate of Carolyn Sue Sterns, Deceased, Plaintiff-Appellant,

v.

M. F. A. MUTUAL INSURANCE COMPANY, a Missouri corporation, Defendant-Respondent.

Nos. 24207, 24162.

Kansas City Court of Appeals.

Missouri.

Feb. 25, 1966.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 4, 1966.

Application to Transfer Denied May 9, 1966.

E. J. Murphy, Butler, for appellants.

William J. Cason, Clinton, Harold L. Caskey, Butler, for respondent.

CROSS, Presiding Judge.

Two separate cases are the subject of this opinion. The appeals were taken severally but were later consolidated for appeal purposes. The two cases are successive actions to recover $10,000.00 for the wrongful death of an automobile accident victim. The suits were instituted by the respective plaintiffs, acting in successively different capacities, against M. F. A. Insurance Company, as defendant, under the same uninsured motorist coverage provided by a policy of automobile insurance is-

sued to Kermit Sterns as the named insured.

The subject deceased was Carolyn Sue Sterns, the minor daughter of Kermit Sterns and Geraldeen Sterns, his wife. On August 4, 1963, she suffered death from *bodily injury accidentally sustained while* riding as a passenger in a car owned and operated by one Danny Ross Green. At that time she was 18 years old, unmarried, and residing with her parents in their home.

The first suit, case No. 24,207, was filed on November 22, 1963, by plaintiffs Kermit and Geraldeen Sterns, as parents of deceased, against M. F. A. as defendant. The trial court entered a judgment of dismissal on February 28, 1964, by sustaining defendant's motion to dismiss plaintiffs' petition on the grounds that it "fails to state a cause of action and wholly fails to state any grounds upon which the court could grant plaintiffs any relief".

The second action, case No. 24,162, was filed against M. F. A. on March 6, 1964, by Kermit Sterns as Administrator of the Estate of Carolyn Sue Sterns, deceased. This suit was also dismissed by the trial court by judgment entered on July 22, 1964—also on grounds that plaintiff's petition "fails to state a cause of action" and "fails to state grounds upon which the court could grant plaintiff any relief".

The petition filed by Kermit and Geraldeen Sterns in the first suit, case No. 24,207, contains allegations that they were the natural parents of Carolyn Sue Sterns and that defendant M. F. A., as an authorized corporate insurance company, issued to plaintiff Kermit Sterns a policy of automobile insurance which "contained protection for plaintiffs up to $10,000.00 against damages caused by an uninsured motorist"—by reason of the following quoted clause contained in the insuring agreement V of the policy:

"1. COVERAGE E—Uninsured Motorist Coverage. The Company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; * * *".

Additional policy provisions pleaded in the petition are definitions of "insured" and "uninsured automobiles" (in pertinent part) as used in Coverage E, quoted respectively as follows:

"2. Definition of Insured—With respect to the insurance afforded under Coverage E the unqualified word 'insured' means (a) the first named insured, his spouse and any relative; * * *".

"3. Definition of Uninsured Automobile.—'Uninsured automobile' means (1) an automobile with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile; or (2) an automobile with respect to the ownership, maintenance or use of which the only bodily injury liability insurance policy or bond applicable thereto at the time of the accident with respect to any person or organization legally responsible for the use of such automobile was issued by an 'insolvent insurer,' which means an insurer whose insolvency is declared and determined, by legal proceedings, not later than three years after the date of the accident; or (3) a 'hit and run automobile', * * *".

The petition contains additional allegations of fact to the effect that plaintiffs' minor daughter was killed on August 4, 1963, while riding as a passenger in an automobile driven by one Danny Ross Green and as a direct result of his negligence in operating the vehicle at excessive speed, losing control over it, running it off the highway

into the ditch and causing it to overturn, and that Green was then operating an "uninsured automobile" within the meaning of the policy. Plaintiffs further allege that by reason of Green's negligence resulting in the death of their minor child they sustained loss of her services and incurred obligation for her funeral expenses, and are "legally entitled to recover damages from Danny Ross Green for the death of their child". The petition concludes with averments that plaintiffs gave M. F. A. due notice and proofs of loss and notice that Green was uninsured, and that M. F. A. has refused to pay plaintiffs under Coverage E although due demand was made. Plaintiffs pray judgment for $10,000.00. No copy of the policy was attached to the petition as an exhibit.

The petition filed in case No. 24,162 (the second suit) appears to be generally adapted from the petition filed by the parents in case No. 24,207, with some necessary variation, with additionally pleaded policy language, and with a copy of the policy attached to it. The pleading states that Carolyn Sue Sterns died intestate on August 4, 1963; that she was then single and without issue, and that she was survived by Kermit Sterns and Geraldeen Sterns, who as her natural parents were her heirs and distributees; also, that plaintiff Kermit Sterns is administrator of the estate of Carolyn Sue Sterns and that as her "legal representative" he is "legally entitled to recover" from the uninsured motorist the damages sustained by Kermit and Geraldeen Sterns as natural parents of the deceased minor child. The administrator's petition quotes the pertinent text of Coverage E (the uninsured motorist clause), the definition of "insured" and the definition of "uninsured automobile", as those provisions are set out in the parents' petition, but pleads two additional provisions, to wit, definitions of the words "relative" and "bodily injury" contained in the insuring agreements of the policy, quoted respectively as follows:

" 'Relative' means the spouse of the named insured and any relative of the named insured or spouse who is a resident of and actually living in the same household as the named insured".

\* \* \* \* \* \*

" 'Bodily injury' means bodily injury, sickness or disease and includes death resulting therefrom at any time".

Otherwise, the allegations of the two petitions as to issuance of the policy; negligence on the part of Danny Ross Green; the resulting accident and death of Carolyn Sue Sterns; the status of Green as an uninsured motorist; the nature of loss and damage sustained by the parents; their compliance with policy terms and requirements; and, M. F. A.'s refusal to pay after demand,—are essentially identical. The two petitions contain identical prayers for the recovery of $10,000.00.

In the first point of appellants' brief it is contended on behalf of plaintiffs Kermit and Geraldeen Sterns that the trial court erred in sustaining defendant's motion to dismiss their petition filed in case No. 24,207, "because said parents' petition did not set forth a claim for which relief could be granted". Plaintiff parents take the position that they have pleaded sufficient facts to establish that Coverage E "does cover the death of their minor child and that payment of the benefits should be made to them as parents".

Defendant counter-contends that the parents' petition did not set forth a claim for which relief could be granted, primarily on the ground that the uninsured motorists clause (Coverage E) was not intended to and does not afford indemnity to any surviving husband, wife, minor child or children, or surviving parent or parents (as named in V.A.M.S., Sec. 537.080) for damages resulting from wrongful death of an insured caused by an uninsured motorist, or entitle any one of those named persons to maintain suit on the policy. Defendant concedes in oral argument that

the administrator or executor of such an insured would be entitled to payment of the damages and to bring an action to recover such damages "in a proper case" —meaning if none of the other persons named in the wrongful death statutes were left surviving the deceased. Defendant insists that the term "legal representative" can be interpreted only in its strict legal sense— that is, as "administrator" or "executor" —and submits that Kermit and Geraldeen Sterns cannot be considered to be the legal representative of their deceased daughter. Furthermore, says defendant, there is no allegation in the petition to that effect.

■ Our preliminary examination of the issue thus presented indicates that its determination depends primarily upon the construction to be placed upon the term "legal representative" which the policy contains but does not define. It is clearly obvious (and conceded by defendant) that the policy provides coverage for wrongful death *at least* in cases where the decedent is represented by an administrator or executor and none of the other classes entitled to sue is in existence. This being so, is there any substantial reason to conclude that surviving husbands, wives, fathers, mothers and minor children were intentionally excluded from the policy's protection? Are we constrained by any legal principles or precedent to translate "legal representative" only in the sense of administrator or executor and thus withhold the remedy from survivors who stand in blood relationship to the deceased? Our resolution of this question will be made under the well established and often repeated rule that since insurance or indemnity against loss is the object and purpose of the contract, the courts should construe it, when possible, *so as to effectuate that purpose, and so as to uphold, rather*

than defeat or avoid the contract. If the language of the policy permits two rational interpretations, the construction which sustains the insured's claim must be adopted, since the language used in the policy is that of the insurer. Soukop v. Employers Liability Assur. Corp., 341 Mo. 614, 108 S. W.2d 86, 112 A.L.R. 149; Hill v. Seaboard Fire & Marine Ins. Co., Mo.App., 374 S.W.2d 606.

What, then, is the purpose of uninsured motorist insurance, and what are the urgencies of public welfare that underlie its origin? For answer, we look to the brief history and development of this comparatively new type of indemnity, which has variously been designated as "Innocent Victim Coverage", "Uninsured Motorist Coverage", "Family Protection Coverage" and "Family Protection against Uninsured Motorists". 48 Cal.Law Review, 1960, p. 516.

79 A.L.R.2d 1252, Annotation, "Insurance as to Uninsured Motorists" designates "uninsured motorist coverage" as "a new type of automobile insurance which came into being as the result of public concern over the increasingly important problems arising from injuries inflicted by negligent motorists who are uninsured and financially irresponsible." The annotator further states in reference to the coverage: "Designed to further close the gaps inherent in motor vehicle financial responsibility and compulsory insurance legislation, this insurance coverage is intended, within fixed limits, to provide financial recompense to innocent persons who receive injuries, *and the dependents of those who are killed,* through the wrongful conduct of motorists who, because they are uninsured and not financially responsible, cannot be made to respond in damages".[1] (Italics supplied.)

1. Citing American Universal Ins. Co. v. Ranson, 59 Wash.2d 811, 370 P.2d 867, 868. In that case the Supreme Court of Washington held: "It appears that this type of insurance coverage is of recent origin. It is intended to provide financial recompense to innocent persons who are injured and to dependents of those who are killed because of the wrongful conduct of uninsured motorists".

We learn from an extensive article entitled "Public Responsibility and the Uninsured Motorist" by Joseph P. Murphy and Ross D. Netherton, 47 Georgetown Law Journal 700, that:

"The simple device of providing insurance against uncollectible automobile accident claims was first proposed during the legislative debate in New York in 1954. It was then called 'The Voluntary Plan' and it was offered by the insurance industry as a way for the insured motorist who was involved in an accident with an uninsured driver to put himself in the same position as if he had been injured by an insured motorist. Since 1954, this type of coverage, sold as an additional endorsement on a regular policy of automobile liability insurance, has been adopted as an optional feature by most automobile liability carriers throughout the United States. It is now generally called 'Uninsured Motorist Coverage', or sometimes 'Family Protection Insurance'.

"Protection under this coverage is in the same amounts as the minimum limits required by state financial responsibility laws and applies to all sums which the insured shall be legally entitled to recover under the law. Protection sometimes is limited to death and personal injury, and sometimes covers death, personal injury and property damage.

*    *    *    *    *    *

"Uninsured Motorist Coverage was first proposed as a counter-measure to compulsory insurance and state-operated unsatisfied judgment funds. * * *

"The offer of voluntary Uninsured Motorists Coverage did not divert the drive for compulsory insurance in New York as its proponents had at first hoped. The rapid adoption of this form of coverage, however, in the competitive insurance industry and its acceptance by the motoring public logically led to the thought that it would be desirable to make Uninsured Motorist Coverage a standard feature of every policy of automobile liability insurance. Thus, it was argued, at least all insured motorists would have protection against injury and damage caused by financially irresponsible motorists.

"New Hampshire in 1957 was the first state to implement this suggestion. Under its law, the Uninsured Motorist Coverage was required only for claims arising from death or personal injury. In 1958, New York and Virginia added mandatory Uninsured Motorist Coverage to their laws in connection with the establishment of industry-operated unsatisfied judgment funds. In New York, coverage was limited to death and personal injury claims;[2] Virginia, however, also included property damage coverage".

2. The New York Motor Vehicle Indemnification Corporation Law, enacted in 1958, Laws 1958, c. 759, establishing provisions for compulsory uninsured motorist coverage, contains the following statement of purpose quoted in part as follows: "The legislature finds and declares that the motor vehicle financial security act as enacted in nineteen hundred fifty-six which requires the owner of a motor vehicle to furnish proof of financial security as a condition to registration, fails to accomplish its full purpose of securing to innocent victims of motor vehicle accidents recompense for the injury and financial loss inflicted upon them, in that the act makes no provision for the payment of loss on account of injury to or death of persons who, through no fault of their own, were involved in motor vehicle accidents caused by (1) uninsured motor vehicles (of various defined classes) * * *. The legislature determines that it is a matter of grave concern that such innocent victims are not recompensed for the injury and financial loss inflicted upon them and that the public interest can best be served by closing such gaps in the motor vehicle financial security act through the incorporation and operation of the motor vehicle accident indemnification corporation". To effectuate the foregoing stated purpose the New York statute further provides: "No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance and use of a motor vehicle by the insured shall be issued or delivered by any authorized

In 12 Drake Law Review, 1962, p. 119, the origin of uninsured motorist coverage is reviewed by Edward J. Reasor, as follows:

"There has long been felt a desire to protect innocent victims from the financially irresponsible motorist. The need became apparent only a few years after the arrival of the automobile and its mass distribution. Some early state legislation attempted to solve the problem by enforcement of compulsory insurance.

\*     \*     \*     \*     \*     \*

"\* \* \* The insurance carriers, although sympathetic toward the victim of an uninsured motorist, for the most part, opposed state imposed programs of compulsory insurance and public Unsatisfied Judgment Funds. In an effort to avoid this step toward 'social welfare insurance', the National Bureau of Casualty Underwriters and the Mutual Insurance Rating Bureau drafted an uninsured motorist endorsement to the family automobile policy. The uninsured motorist provision then became an alternative to compulsory insurance. \* \* \* Currently, \* \* \* New Hampshire, Virginia, New York, South Carolina, California and Florida require all liability carriers to issue an uninsured motorist endorsement on policies sold within the state. In Iowa, the uninsured motorist protection offered by casualty insurers is optional coverage to the policyholder.

"Under the Standard Form version of the uninsured motorist coverage the insurer agrees to pay the insured all sums that he shall be entitled to recover as damages for bodily injury sustained by the insured when caused by an uninsured automobile, but, except for provisions used in North Carolina, South

insurer upon any motor vehicle then principally garaged or principally used in this state unless it contains a provision whereby the insurer agrees that there will be paid to the insured, \* \* \* all sums,

Carolina, and Virginia, does not agree to pay for property damage. The insurer agrees:

'To pay all sums which the insured or his legal representatives shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury \* \* \* including death \* \* \* sustained by the insured, caused by accident, and arising out the ownership, maintenance or use of such uninsured automobile; \* \* \*' "

Discussing the question "What is recoverable", Reasor concludes:

"It would seem that the insured can recover all that he normally would recover in an action against the wrongdoer, *for bodily injury,* up to the limits of his uninsured coverage. This protection is intended to provide financial recompense to innocent persons who are injured *and to dependents of those who are killed* because of the wrongful conduct of uninsured motorists". (Italics supplied.)

Reasor next discusses the specific question before this court as it relates to a surviving wife, as follows:

"\* \* \* (T)he policy, in outlining damages for bodily injury for which there is recovery, does include payment for death resulting from the accident, if sustained by the insured, and defines insured, in part, to include the named insured and any relative. Thus, the wife who often will be the person maintaining a wrongful death action may argue (1) that she is a legal representative entitled to recover for the death sustained by her husband, the insured, or (2) that she is an insured, because she is a relative, and has sustained damages by the death of her husband. Although the policy does promise 'to pay all sums which the insured or his legal repre-

(subject to maximum limitations) which the insured or his legal representative shall be entitled to recover as damages from an owner or operator of an uninsured motor vehicle, \* \* \*".

sentative shall be legally entitled to recover' rather than the broader words of normal coverage, 'to pay on behalf of the insured all sums * * * sustained by any person', there is no specific indication that coverage was meant for survival actions but not for wrongful death claims. As the policy promises 'to pay all sums * * * including death', it is at least ambiguous. Insurance contracts should be liberally construed to accomplish the purpose or object for which they are made. When insurance contracts contain ambiguities, the construction least favorable to or more strongly against the party who prepared the contract should be adopted. It is questionable whether the provisions of the policy, including death as damages, should be limited to recovery under the Survival of Action type of law, while recovery under Wrongful Death Statutes is denied. This question must, of course, be litigated before a conclusive answer can be given, but it would appear that recovery may be had in Iowa for wrongful death under the provisions of the uninsured motorist protection".[3]

A summary of the general nature and purpose of uninsured motorist insurance is contained in 7 Am.Jur.2d, Automobile Insurance, Sec. 135, pp. 460–461, which is generally consonant with and reflects the conclusions reached by previously quoted authority. Of especial interest is the following statement quoted from the cited text: "* * * *The purpose of the statute making uninsured motorist coverage compulsory, it has been said, is to give the same protection to a person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability insurance policy*". (Emphasis supplied.)

The consistent tenor of legal authority we have examined, including the hereinabove quoted, and the clear intendment of the compulsory statutes therein referred to, are that *uninsured motorist coverage in its standard form includes indemnity to such survivors of deceased victims of uninsured automobiles as are legally entitled to sue for damages under wrongful death statutes* —without regard to whether the coverage is provided under compulsion by statute or by voluntary contract.

■ Coverage E of the policy before us is in standard form and is essentially identical with the policy form written and promulgated by the National Bureau of Casualty Underwriters referred to and quoted hereinabove. It is our view that this coverage was intended to provide indemnity for damages resulting from an insured's wrongful death caused by an uninsured motorist, payable to whatever person or persons may be entitled to bring an action under provisions of V.A.M.S., Sec. 537.080, whether spouse, child or children, parent or parents, or administrator or executor. We will so rule unless compelled by arbitrary standards of interpretation to hold that the term "legal representative" includes only administrators or executors and excludes all other classes of persons.

The term "legal representative" has no fixed meaning in the law and does not have the same signification in every case, since its import varies according to the circumstances of its use. Black's Law Dictionary, 2d Ed., p. 1020, defines legal representative as follows:

"Legal representative. A person who, in the law, represents the person and controls the rights of another. Primarily the term meant those artificial representatives of a deceased person, the executors and administrators, who by law represented the deceased, in distinction from the heirs, who were the 'natural' representatives. But * * * the phrase has lost much of its original distinctive

---

**3.** Also see Ward, 9 Buffalo L.Rev., 1959–1960, p. 285, "The Uninsured Motorist". Hentemann, 12 Cleveland-Marshall L.Rev., 1963, 66, "Uninsured Motorist Coverage".

48 California L.Rev., 1960, p. 516, Comments, "Uninsured Motorist Insurance". Loiseaux, 38 Texas L.Rev., 1959, p. 154, "Innocent Victims 1959".

force, and is now used to describe either executors and administrators or children, descendants, next of kin, or distributees. Moreover, the phrase is not always used in its technical sense nor always with reference to the estate of a decedent; and in such other connections its import must be determined from the context; so that, in its general sense of one person representing another, or succeeding to the rights of another, or standing in the place of another, it may include an assignee in bankruptcy or insolvency, an assignee of a mortgage, a grantee of land, a guardian, a purchaser at execution sale, a widow, or a surviving partner."

Also see Black's Law Dictionary, 4th Ed., p. 1041. Reference to 24 Words and Phrases, 594, "Legal Representative", and 52 C.J.S. p. 1041, Legal (Phrases), where many definitions of the term are collected, clearly indicates the great variety of meanings which have been given to it.

A Missouri decision bearing very materially on the immediate question is found in Nudelman v. Thimbles, Inc., 225 Mo.App. 553, 40 S.W.2d 475. The plaintiff there sued for personal injury damages and obtained a judgment against a defunct corporation and individual defendants who constituted its last board of directors. Plaintiff's case against the individuals was based on the theory that they were subject to suit as statutory trustees and as "legal representatives" of the defunct corporation, within the purview of Sec. 3280 R.S.1927 (present V.A.M.S. Sec. 537.020), which provided that actions for personal injury would not abate by reason of the death of the person against whom such actions have accrued, but should survive against the person, receiver or *corporation* liable for such injuries, and "his legal representatives". The individual defendants contended that the term "legal representatives" has a technical meaning and could include only executors and administrators, and therefore would not include them as corporate directors. The court rejected the argument, ruled that the officers and directors of a

defunct corporation were its "legal representatives" charged with the duty to wind up the corporation's affairs, and held that the action survived against the complaining defendants "as the statutory trustees and legal representatives of the company". In affirming the judgment, the court said, "We concede that, in legal usage, the term 'legal representatives' ordinarily refers to executors and administrators, but that is not the only sense in which it may be employed. To the contrary, the meaning to be attached to the term in a particular instance will be determined from the context, and the intent with which the expression is used, and, if those considerations are such as to indicate a meaning different from the ordinary one, the courts will not hesitate so to construe it. 36 C.J. 978".

This court held to the same effect in Wells v. Bente, 86 Mo.App. 264, where we ruled that the grantees of a mortgagor were included within the meaning of the words "personal representatives". ("Personal representative" is generally synonymous with "legal representative" and subject to the same interpretation. Black's Law Dictionary, 2d Ed., p. 1021.) In so holding we said: "It will be noticed that the statute protects the tenant of the 'mortgagor or his personal representatives'. Plaintiff insists that the words, 'personal representatives', means executors or administrators. That is the general and usual meaning. But those words are not necessarily of one meaning. Like many others in the English language they may be given different interpretations, depending upon the sense in which they are used, whether that be in statute, will, or deeds. Thus, the words sometimes mean 'heirs'. Ewing v. Shannanhan, 113 Mo. 188 [20 S.W. 1065]; Ellstroth v. Young, 83 Mo. App. 253; Davies v. Davies, 55 Conn. 319, [11 A. 500.] The words may include 'assigns' within their meaning. [New York Mutual Life Ins. Co. v. Armstrong, 117 U.S. 591, 6 S.Ct. 877, 29 L.Ed. 997.]

"When the same words have different meaning, that meaning should be preferred which will not be wholly unreasonable, as

shown by the object, and the connection in which they are used. It is worthy of remark that in the discussion of this question the authorities constantly refer to whether this or that meaning contended for would be reasonable. Applying the foregoing to the statute in question, we are satisfied that the object of the statute was to protect the tenant who had the growing crop at the time of the sale of the land, whether he be the tenant of the mortgagor himself, or the tenant of his grantees; and that therefore the mortgagor's grantees, immediate or remote, were included within the meaning of the words, 'his personal representatives' ".

The New York case, Dearborn v. Peugeot Auto Import Co., 170 App.Div. 93, 155 N.Y.S. 769, 771, involved a section of the Workmen's Compensation Act which provides that the "legal representative" of an injured employee, who dies as the result of the injury, may optionally elect to claim compensation under the act or maintain an action in the courts for damages. The court held that "legal representative" means the dependent widow and not the executor or administrator.

In Seaboard Air Line Ry. v. Moseley, 60 Fla. 186, 53 So. 718, 719, the father of a minor child brought a wrongful death action under a Florida statute providing that where the death of a minor child is caused by wrongful act or negligence of a corporation, the father "as the legal representative of such minor child" may sue for loss of the child's services and for the mental suffering of the parent or parents. The Supreme Court of Florida held that the damages authorized are personal to the parents and an action therefor should be by the parents personally. The court further said that the administrator has no interest in or right to such recovery—the term "legal representative" having reference to the parties benefited by the rights conferred and not to the administrator or executor of a decedent.

In accordance with all the foregoing authority we will perform our duty to select and apply a meaning of "legal representative" that would be fair and reasonable, and consistent with the entire context of the language in which the words are employed, and that would effectuate the purpose of Coverage E rather than defeat it. We will not resolve the question by construing ambiguous, technical language in favor of the insurer who wrote the policy, and in so doing, nullify its clearly apparent intendment. We have heretofore stated that the intended purposes of uninsured motorist insurance, such as is provided by Coverage E, include indemnification of survivors and dependents of insureds who suffer bodily injury resulting in death by the fault of uninsured motorists. We uphold that purpose by declaring that the term "legal representative" used in the policy, as it applies to a person or persons claiming damages for a wrongful death, includes all persons who may have the right to bring an action under V.A.M.S., Sec. 537.080, and that its meaning is not restricted to an administrator or executor. It is our specific ruling here that under the facts pleaded by plaintiffs' petition and the legal effect of Coverage E, the plaintiff parents shall be considered as the "legal representative" of the deceased unmarried child. Furthermore, we hold that the facts pleaded in their petition are tantamount to allegations that they are the "legal representative" of decedent within the legal contemplation of Coverage E.

We are supported in this ruling by a recent decision of the Florida appellate court in Zeagler v. Commercial Union Insurance Co. of N. Y., 166 So.2d 616 (decided in 1964). This decision was affirmed in all respects by the Supreme Court of Florida. Commercial Union Insurance Company of N. Y. v. Zeagler, 172 So.2d 450 (decided March 3, 1965). The case is precisely in point. Commercial as insurer issued its Family Combination Policy to one Zeagler in-

suring him against uninsured motorists.[4] He was killed in an accident with an uninsured motorist. The widow asserted her claim under the Florida wrongful death statute[5] as widow of the deceased—not as an administratrix. The insurer made the same contention asserted by M. F. A. in the instant case—that only a legal representative (administratrix) could prosecute the action. The court rejected the insurer's defense (as we have done) and held that since the purpose of the wrongful death provision is obviously to protect the insured's family, the widow was entitled to sue as surviving spouse and recover under the policy. The court reasoned:

"Under § 768.02, Fla.Stat., F.S.A., a wrongful death action cannot be maintained by the legal representative of the deceased if, at the time of death, the deceased had a living spouse or other dependents. The right is possessed only by her or the other dependents. Insurance policies are generally construed liberally in favor of coverage. See: National Casualty Co. v. General Motors Acceptance Corp., Fla.App.1964, 161 So.2d 848. The purpose of the wrongful death provision is obviously to protect the insured's family. Under the appellee's theory the plaintiff-appellant cannot maintain an action even though a surviving spouse, and contends that only a legal representative could prosecute same. To follow this reasoning to a logical conclusion, if all classes enumerated in § 768.02, Fla.Stat., F.S.A., were deceased at the time of the wrongful death, then the claim would revert to the legal representative which, in effect, would permit collection only subsequent to all the prior classes referred to in the statute [for whose benefit same was enacted] had become extinct. We refuse to adopt this reasoning and specifically hold that the surviving spouse has a right to recover for the wrongful death of the insured which was occasioned by the wrongful activity of an uninsured motorist".

■ Defendant directs another complaint against the parents' petition (concededly minor): that the pleading is insufficient because it contains no allegation that the company is obligated to pay damages *for death*. This contention is predicated on the circumstance that the parents' petition, although containing the text of Coverage E which specifies "bodily injury", does not include the policy definition of "bodily injury" as meaning "bodily injury, sickness or disease and includes death resulting therefrom at any time". This contention has no merit. "The word 'injuries' is a generic term, and it naturally includes injuries * * * that are fatal, and those that are not fatal". Standard Life & Accident Ins. Co. v. McNulty, 10 Cir., 157 F. 224, 225. Also see Putnam v. Savage, 244 Mass. 83, 138 N.E. 808, 810, where it was held that death resulting from corporal impact with the living body, caused by another's negligence, constitutes "bodily injury". The court said: "Death of a person by the negligence of another can result

4. The coverage was as follows: "Coverage J—Uninsured Motorists (Damages for Bodily Injury): To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an insured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; * * *".

5. Florida St.Ann., Sec. 768.02 reads in part as follows: "Every such action shall be brought by and in the name of the widow or husband, as the case may be, and where there is neither widow nor husband surviving the deceased, then the minor child or children may maintain an action; and where there is neither widow nor husband, nor minor child or children, then the action may be maintained by any person or persons dependent on such person killed for a support; and where there is neither of the above classes of persons to sue, then the action may be maintained by the executor or administrator, as the case may be, of the person killed".

only from 'damage of a physical character' or a 'bodily injury'. Corporal impact with the living body ordinarily accompanies and is essential to death caused by negligence. Death of the plaintiff's intestate in the case at bar was caused by the negligence of the original 'defendant in so operating an automobile as to run down the deceased'. That was a 'damage to the person' of the plaintiff's intestate as well as 'bodily injury' and 'damage of a physical character'. It was said in Moe v. Smiley, 125 Pa. 136, at page 141, 17 Atl. 228, at page 229 (3 L.R.A. 341): 'It is idle to say that, when a man is killed by unlawful violence, it is not an injury to his person' ". The obligation of defendant to pay damages for the death of Carolyn Sue Sterns is implicit in its agreement to pay damages "because of bodily injury", as contained in Coverage E which the parents pleaded in their petition. See the recent decision in M. F. A. Insurance Co. v. Lovins, 248 F.Supp. 108, reported December 15, 1965.

■ Looking finally to the petition in Case No. 24,207, we note that it contains allegations showing the issuance of the contract and that it was in effect when the claim arose; the text of the coverage relied upon which obligates the company to pay damages for wrongful death caused by an uninsured motorist; a definition of the "insured" and allegations of fact to bring the deceased Carolyn Sue Sterns within policy coverage as the subject of the claim; allegations of her wrongful death from the fault of an uninsured motorist, establishing loss within the policy coverage; allegations sufficient to establish plaintiffs' right to recover damages under the wrongful death statute as decedent's legal representative; allegations showing performance of essential conditions by claimants, demand of payment by plaintiffs and nonpayment by the defendant; also, appropriate demand for judgment. The pleading is therefore sufficient as a claim for relief within the requirements of Rule 55.06 V.A.M.R., inasmuch as it contains "a short and plain statement of the facts showing that the pleader

is entitled to relief" and "a demand for judgment for the relief to which he deems himself entitled". See 20A Appleman, Insurance Law and Practice, Sec. 11826, (page 207), and Missouri cases cited in Note 44; 16 Missouri Digest Insurance, ■ (1) (2). We necessarily rule that the dismissal of the action was erroneous.

In reaching these conclusions we have not found it necessary to take into account or consider the merit of contentions made by the plaintiff parents (1) that they might be considered to be legal representatives of decedent under the effect of the policy's loss payable clause which provides (in part) that "any amount due hereunder is payable * * * to the insured, or * * * if the insured is deceased * * * to a person authorized by law to receive such payment or a person legally entitled to recover the damages which the payment represents", and (2) that although Carolyn Sue Sterns was the "insured" whose bodily injury and death gave rise to the claim, her parents may be considered to be *additional* "insureds" under the policy terms and, as such, (not as her "legal representative"), recover for the death loss. Consequently defendant's suggestions and argument directed against these contentions have no relevance.

■ The second point of appellants' brief is a submission—only in the alternative, and in the event we rule against the sufficiency of the parents' petition—that the administrator's petition states a claim for which relief could be granted. Plaintiff administrator states "with all candor" that in his opinion the parents of Carolyn Sue Sterns are the proper parties to bring the action for the damages resulting from her death, but that if our holding is otherwise, then the administrator should be permitted to recover. Defendant M. F. A. submits that the administrator is not "legally entitled to recover" under the policy because the wrongful death statute does not extend him the right to maintain an action when there are surviving parents. We encounter no difficulty in ruling this assignment. The

right of an administrator to sue for wrongful death emanates only from V.A.M.S. Sec. 537.080 and it never ripens if there are surviving parents of the decedent. Plaintiff administrator has no cause of action in the present instance and he has stated none in his petition. The trial court properly dismissed the action.

Accordingly, we reverse the judgment in Case No. 24,207 and remand that cause for further proceedings. The judgment in Case No. 24,162 is affirmed.

HOWARD, J., concurs.

BLAIR, J., not participating.