[No. 254-3.    Division Three.    May 14, 1971.]

ELDON B. BRUMMETT *et al., Respondents,* v. GRANGE INSUR-
ANCE ASSOCIATION, *Appellant.*

*Terry A. Brooks* (of *Nashem, Prediletto & Brooks*), for appellant.

*Walter E. Weeks, Jr.* (of *Wilson & Weeks*), for respondents.

EVANS, J.—The sole issue presented upon this appeal is

whether the uninsured motorist endorsement of an automobile liability insurance policy issued by the Grange Insurance Association to Eldon and Evelyn Brummett, husband and wife, provided coverage for damages resulting from the wrongful death of the Brummetts' two minor children.

The facts are not in dispute. On August 19, 1969 Elizabeth Brummett, age 16, and Leslie Brummett, age 12, were in sleeping bags near a collapsible swimming pool located in the backyard of their parents' home. An uninsured automobile left the roadway adjacent to the yard, crashed through a fence, and after running over the girls struck and broke open the swimming pool which was above ground level. The automobile dragged the girls into the pool, causing their death by drowning.

At the time of this tragic accident respondents, Mr. and Mrs. Brummett, were named insureds under an automobile liability policy issued by Grange Insurance. The deceased children were also insureds by definition under the uninsured motorist supplement of said policy.

In a proceeding commenced by the Brummetts to compel arbitration in accordance with policy provisions of the insurance contract, Grange Insurance sought to stay arbitration and also filed a motion for declaratory judgment. It appeals from judgment entered by the trial court declaring Grange Insurance liable to pay to respondents, within the policy limits, all damages which respondents have suffered as a result of the death of their two minor children, including damages for loss of love and companionship of said children and destruction of the parent-child relationship.

In support of its contention the trial court erred in its determination, appellant first argues that the insurance provision which obliges appellant *"to pay all damages which the insured shall be legally entitled to recover from the owner or operator of an uninsured automobile because of bodily injuries sustained by the insured . . ."*, yields only one reasonable interpretation, namely, that the damages covered are those personal to the injured or deceased person covered under the policy. We need not pass upon

this contention, however, because it is not the language of the insuring agreement, but rather the language of RCW 48.22.030, enacted by the legislature in 1967, which is controlling of the issue presented. This statute provides in pertinent part:

> On and after January 1, 1968, no . . . policy . . . insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, . . . *for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles* . . . because of bodily injury . . . *including death, resulting therefrom,* . . .

(Italics ours.)

█ The public policy thus expressed by the legislature imposes an obligation upon insurers to provide protection to their insureds against loss caused by wrongful conduct of an uninsured motorist. Any limiting language in an insurance contract which has the effect of providing less protection than that made obligatory by the above statute would be contrary to the public policy as expressed, and of no force and effect.

There have been no decisions of our Supreme Court on the precise question of whether the coverage required by RCW 48.22.030 includes those damages provided by RCW 4.24.010 for the loss suffered by parents due to the wrongful death of a minor child. Courts of other jurisdictions, however, have had occasion to interpret similar statutes containing language identical to RCW 48.22.030. One of the leading cases in this respect is *Davis v. United States Fid. & Guar. Co.*, 172 So. 2d 485 (Fla. App. 1965), which construes a Florida statute containing language identical to the Washington statute.[1] There the court stated at page 486:

---

[1] The Florida statute (627.0851, Fla. Stat. (1963)) provides:

"(1) No automobile liability insurance, covering liability arising out

The cited statute requiring that protection against uninsured motorist be provided in all automobile liability insurance policies issued in this state, . . . established the public policy of this state to be that every insured, within the definition of that term as defined in the policy, is entitled to recover under the policy for the damages he or she would have been able to recover against the offending motorist if that motorist had maintained a policy of liability insurance. It is our view that when the insurance company inserted the limiting words "sustained by the insured" . . . in the policy issued in this case it sought to restrict the coverage afforded by the policy in a manner contrary to the intent of the statute. It necessarily follows that the restrictive language inserted in the insurance policy being considered has the effect of defeating the purpose and intent of the statute and must be considered nugatory and of no effect.

In Zeagler v. Commercial Union Insurance Co. of New York, the Third District Court of Appeal in considering the identical question here presented reached the above conclusion. We concur with the majority opinion authored by Chief Judge Barkdull and quote with approval the following portion thereof:

"The protection against personal injury or death, as a result of an accident involving an uninsured motorist, was included in insurance policies because of the adoption of what is now known as § 627.0851, Fla.Stat. (1963), F.S.A., which is the successor to Ch. 61-175, of the Laws of 1961, wherein the Legislature specifically provided that all automobile liability insurance policies shall include [under the provisions of their coverage] insurance indemnifying the insured for damages arising out of an accident with an uninsured motorist because of 'bodily injury, sickness or disease, *including death,* resulting therefrom; * * *' [emphasis added]. See: § 627.0851(1) Fla.Stat.,

of the ownership, maintenance, or use of any motor vehicle, shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than limits described in § 324.021(7), under provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; . . ."

F.S.A. Therefore, it would appear that it was the intention of the Legislature [in requiring insurance companies to provide uninsured motorist coverage] that recovery be had for wrongful death and, in view of the provisions of Ch. 768, Fla.Stat., F.S.A., all parties having a right to recover upon a wrongful death were to have a protection under the statute. Obviously §§ 627.0851(1) and 768.02, Fla.Stat., F.S.A., must be read together, and the insurance company was without power [in its policy] to limit its liability required by the statute, which imposed upon it the obligation to include coverage against injury or death by an uninsured motorist."

In *Sterns v. M. F. A. Mut. Ins. Co.*, 401 S.W.2d 510, 517, 26 A.L.R.3d 919 (Mo. App. 1966) the court in allowing parents to recover for the wrongful death of their minor child under an uninsured motorist clause made the following observation:

A summary of the general nature and purpose of uninsured motorist insurance is contained in 7 Am.Jur.2d, Automobile Insurance, Sec. 135, pp. 460-461, which is generally consonant with and reflects the conclusions reached by previously quoted authority. Of especial interest is the following statement quoted from the cited text: "*  *  *  The purpose of the statute making uninsured motorist coverage compulsory, it has been said, is to give the same protection to a person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability insurance policy*". (Emphasis supplied.)

The consistent tenor of legal authority we have examined, including the hereinabove quoted, and the clear intendment of the compulsory statutes therein referred to, are that *uninsured motorist coverage in its standard form includes indemnity to such survivors of deceased victims of uninsured automobiles as are legally entitled to sue for damages under wrongful death statutes*—without regard to whether the coverage is provided under compulsion by statute or by voluntary contract.

In the instant case the parties have stipulated that the plaintiffs are legally entitled to recover from the operator of the uninsured automobile, all damages resulting from

the death of the two children, including damages for loss of love and companionship of the children and destruction of the parent-child relationship, in accordance with RCW 4.24.010.

■ The thrust of the decisions in *Davis* and *Sterns*, as we read them, is that the purpose of uninsured motorist provisions is to give the same protection to a person damaged as if the injury had been caused by an automobile covered by a standard policy. In other words, the insurance company stands in the shoes of the uninsured motorist and must pay its insured for all damages which he could otherwise collect had the offending car been covered by liability insurance. Our own Supreme Court appears to have reached the same conclusion as to the purpose of uninsured motorist provisions when, in considering a different question, it stated in *State Farm Mut. Auto. Ins. Co. v. Bafus*, 77 Wn.2d 720, 724, 466 P.2d 159 (1970):

> The insurance carrier which issued the policy stands, therefore, in the shoes of the uninsured motorist to the extent of the carrier's policy limits.

And on page 724:

> The coverage required and the protection to be afforded from the uninsured motorist . . . [is] precisely the same damages which one can ordinarily claim for bodily injury from any other operator or owner of a motor vehicle.

■ We therefore apply the reasoning of *Davis* and *Sterns* to the present issue and hold the public policy expressed in RCW 48.22.030 entitles respondents to recover within the policy limits the same damages it is conceded they would have been entitled to recover against the offending motorist if that motorist had maintained a policy of liability insurance. That includes damages for loss of love and companionship of the children and destruction of the parent-child relationship, as provided in RCW 4.24.010.

Judgment affirmed.

MUNSON, C.J., and GREEN, J., concur.