[No. 28665-0-I.   Division One.   December 28, 1992.]

WEST AMERICAN INSURANCE COMPANY, *Respondent,* v.
MIRIAM E. MACDONALD, *as Personal
Representative, Appellant.*

*Charles M. Cruikshank III,* for appellant.

*T. David Copley* and *Keller Rohrback,* for respondent.

GROSSE, C.J. — Appellant MacDonald appeals the summary judgment dismissal of her cause of action on behalf of decedents James and Edora Potter for underinsured motorist (UIM) benefits. She contends that the trial court erroneously applied California's substantive law, which provides no recovery on these facts, to the insurance policy in question. We affirm.

In 1956, West American Insurance Company (West American) issued a policy of automobile insurance to James and Edora Potter, a couple living in Cathedral City, California. That policy was renewed over the years and was in effect in August of 1989 when the Potter car collided with a vehicle driven by William Andersen near Sequim, Washington, killing the Potters, Mr. and Mrs. Andersen, and others. Responsibility for the accident has not been ascertained. The Andersen estates have filed an action against the Potter

estates contending that Mr. Potter's negligence caused the deaths of the Andersens. That claim is disputed.

Miriam MacDonald as personal representative of the Potter estates (MacDonald) asserted claims against the other potentially responsible parties, and settled those claims in October 1990. MacDonald then asserted a claim under the UIM provisions of the Potter insurance policy.

As framed by the parties, this dispute presents a choice of law question: Does California or Washington law apply to determining the rights of the parties? The choice of law issue is outcome determinative. Under California law, the Andersen vehicle does not meet the definition of an "underinsured" vehicle contained in the policy, and no UIM benefits are available. On the other hand, if Washington law applies, the Andersen vehicle may fall within the definition of an "underinsured" vehicle contained in the Washington UIM statute, making a UIM claim possible.

The Potters resided in Cathedral City, California, at the time they purchased the policy from the California insurance agency White & Company, Inc. The policy shows the Potters' address to be P.O. Box 365, Cathedral City, California. The contract itself, which is West American's "California" policy form, refers to California law and provisions of the California Insurance Code. In confirmation of the contract, West American issued to the Potters a "California auto insurance identification card".

The policy insured a 1988 Cadillac (the vehicle Mr. Potter was driving at the time of the accident) which was licensed and registered in the state of California. The California certificate of title and California registration for the Potter vehicle show their address as P.O. Box 365, Cathedral City, California 92234. The certificate of title indicates a prior address of 68650 Second Street, Cathedral City, California 92234. At the time of the accident, the Potter vehicle displayed a California "disabled person" license plate and sticker. Mr. Potter was driving with a California driver's license, which indicated his address as P.O. Box 365, Cathedral City, California 92234. A

September 4, 1988, letter from Edora Potter to her insurance company noted that Cathedral City, California, was the Potters' permanent residence, although the Potters had spent the summer of 1988 in Washington. In sworn answers to interrogatories dated August 7, 1989 (less than 1 week prior to the accident), James Potter characterized his "home" as "No. 108-68650 Second Street, Cathedral City".

The Potters inherited a mobile home in Sequim and visited Washington during the summers of 1987, 1988, and 1989. During one of their extended summer visits, the Potters executed wills referring to themselves as residents of both California and Washington.

West American commenced this declaratory relief action on August 23, 1990, seeking a determination that no UIM coverage existed under the terms of the Potters' insurance contract. On May 30, 1991, West American and MacDonald presented cross motions for summary judgment to determine whether UIM coverage was available under the Potters' policy. The parties agreed that there were no disputes of material fact; the sole question is one of law.

The trial court ruled that the insurance contract should be interpreted according to the substantive law of California, that pursuant to California law and the contract the vehicle driven by Mr. Andersen did not qualify as underinsured, and hence that no UIM benefits were recoverable under the policy. Accordingly, the trial court entered declaratory judgment in favor of West American. MacDonald then filed this appeal.

■ Which law will apply to a case is determined on a case-by-case basis. One law, for example, may apply to liability issues and another to damage issues in tort actions. *See, e.g., Kammerer v. Western Gear Corp.*, 96 Wn.2d 416, 635 P.2d 708 (1981). For any issue the law of choice will be that of the state with the most significant relationship to the issue in question. *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 555 P.2d 997 (1976). The contacts are to be evaluated according to their relative importance to the practical issues being

examined. *Spider Staging*, 87 Wn.2d at 581 (citing Restatement (Second) of Conflict of Laws § 145 (1971)).

The policy at issue contained the following provision specifying the scope of UIM coverage:

> An underinsured motor vehicle is one to which a liability bond or policy applies at the time of the accident but its limit for liability is less than the limit of liability for this coverage.

This definition of underinsured in the contract between West American and the Potters is consistent with the California Insurance Code, which defines an "underinsured motor vehicle" as a motor vehicle that is an insured motor vehicle but insured for an amount that is less than the insured motorist limits carried on the motor vehicle of the injured person. Cal. Ins. Code § 11580.2(p)(2).

Whether substantive Washington or California law (and the contract's terms) applies to the interpretation of "underinsured" is critical. California, and the contract, use a "decreasing layer" approach to defining UIM coverage. If the insurance limits of the negligent driver in an accident total more than the insurance limits of the insured driver, the other driver is not considered "underinsured". *Rudd v. California Cas. Gen. Ins. Co.*, 219 Cal. App. 3d 948, 955, 268 Cal. Rptr. 624, 627 (1990). Under this approach the Andersen vehicle was not underinsured and hence MacDonald cannot recover UIM benefits because the Potters carried UIM coverage with limits of $100,000 per person and $300,000 per occurrence; whereas, the Andersens carried the same policy limits and an additional $30,000 per person and $60,000 per occurrence. These total more than the UIM limits of the Potters' policy.

Washington's approach to defining "underinsured" produces a different result. RCW 48.22.030 defines an underinsured motor vehicle as one on which the liability limits are "less than the applicable damages which the covered person is legally entitled to recover." Washington uses a "floating layer" approach to determine UIM coverage. The layer of UIM coverage "floats" above any liability limits of insurance

available. Thus, if a driver is at fault and an insured under the Potter policy is not fully compensated by that driver's liability insurance, the Potters would be entitled to make a claim for damages up to the limits of their UIM coverage. *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 707 P.2d 1319 (1985); *United Servs. Auto. Ass'n v. Winbeck*, 30 Wn. App. 769, 637 P.2d 996 (1981).

■ West American contends that the question presented in this appeal is purely one of contract interpretation with respect to the scope of UIM coverage, specifically whether, under the terms of the insurance contract between West American and the Potters, the vehicle driven by Andersen was "underinsured". As such it argues that the issue is governed by traditional *contract* choice of law rules. Those rules would have the court consider:

(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties.

*Potlatch 1 Fed. Credit Union v. Kennedy*, [76 Wn.2d 806, 809, 459 P.2d 32 (1969)] (quoting Restatement (Second) of Conflict of Laws § 188 (1971)).

*Dairyland Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 41 Wn. App. 26, 31, 701 P.2d 806, *review denied*, 104 Wn.2d 1016 (1985).

For her part, MacDonald contends that Washington *tort* choice of law rules apply because the Potters have made a claim against their insurance company for benefits under the UIM provisions of their policy. MacDonald urges us to apply tort choice of law rules, according to which we would consider:

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.

*Barr v. Interbay Citizens Bank,* 96 Wn.2d 692, 697-98, 635 P.2d 441, 649 P.2d 827 (1981) (quoting *Johnson v. Spider Staging Corp.,* 87 Wn.2d 577, 581, 555 P.2d 997 (1976) (quoting Restatement (Second) of Conflict of Laws § 6 (1971))). Because these factors are to be weighted according to their relative relevance in the case, *Barr,* 96 Wn.2d at 689, and because the accident occurred in Washington, MacDonald would have us apply Washington law to the interpretation of the contract.

MacDonald supports her position by asserting that, because the basis for an insured's claim against its insurer to recover UIM benefits is its right against the underinsured tortfeasor, tort rather than contract choice of law rules apply. That position arguably finds support in the literal holding of *Bush v. O'Connor,* 58 Wn. App. 138, 791 P.2d 915, *review denied,* 115 Wn.2d 1020 (1990). There the court opined:

> Under RCW 48.22.030(2), automobile liability policies for motor vehicles registered or principally garaged in this state must include coverage "for the protection of persons insured thereunder *who are legally entitled to recover damages from owners or operators of underinsured motor vehicles* . . . because of bodily injury, death, or property damage, resulting therefrom . . .". (Italics ours.) Our courts consistently have held that the insurer stands in the shoes of the underinsured motorist and provides its insureds with the coverage the underinsured motorist's insurance would have provided, if he had such insurance. *Sayan v. United Servs. Auto. Ass'n,* 43 Wn. App. 148, 157, 716 P.2d 895 (citing *Grange Ins. Ass'n v. Hubbard,* 35 Wn. App. 407, 413, 667 P.2d 121, *review denied,* 100 Wn.2d 1023 (1983); *Brummett v. Grange Ins. Ass'n,* 4 Wn. App. 979, 984, 485 P.2d 88 (1971)), *review denied,* 106 Wn.2d 1009 (1986). *Since the basis of the Bushes' claim for UIM coverage is their rights against the underinsured tortfeasor, tort choice-of-law principles apply.*

(Last italics ours.) *Bush,* 58 Wn. App. at 147.

Caution is required in construing the above passage. The statement, viewed in conjunction with *Dairyland Ins. Co. v. State Farm Mut. Auto. Ins. Co., supra,* suggests it is misleading to consider this holding outside the context of its particular facts. Indeed, read literally, the highlighted language posits a rule that would impose tort choice of law rules on all

198

issues arising from UIM claims, because UIM claims ultimately always spring from rights against an underinsured tortfeasor.

*Dairyland* is a case whose facts are more closely analogous to those at bar. There, an Idaho resident was injured in an automobile accident in Washington. There was a direct conflict between Idaho and Washington law regarding the interpretation of the "household exclusion" clause in the Idaho resident's insurance contract. Thus, the choice of law question was dispositive as to coverage, as it is in this case. The trial court held that Idaho law applied, and the Court of Appeals affirmed.

■ The court rejected the tort approach to determining most significant contacts, *Dairyland,* 41 Wn. App. at 30, reasoning that the question of insurance coverage "is a question of contract interpretation", and that "[t]he most significant contacts to be considered in resolving these questions revolve around the expectations of the parties at the time of contracting". *Dairyland,* 41 Wn. App. at 31. The court used a contract approach to determining the most significant contacts, and reasoned that Idaho law controlled because:

> State Farm's policy was issued in Idaho to an Idaho resident, who paid premiums in Idaho. Dairyland admits "State Farm's policy holder, Lincoln McGinnis, would, being a resident of Idaho, drive mainly in Idaho." Therefore, the principal location of the risk and the cost of the policy were presumably established according to Idaho law.

*Dairyland,* 41 Wn. App. at 31-32. The court articulated another rationale to support its conclusion:

> Washington recognizes that an insurance company has a "legitimate interest . . . in preventing an increase in the quantum of risk without a corresponding increase in the premium; . . ." *Grange Ins. Ass'n v. MacKenzie,* 103 Wn.2d 708, 712, 694 P.2d 1087 (1985). We agree with the reasoning of *Urhammer v. Olson,* 39 Wis. 2d 447, 451, 159 N.W.2d 688, 690 (1968), which addressed an identical issue. There the court stated:
> > Certainly one would not argue that the policy limits in this contract would change when state lines are crossed. Like-

wise, the other contractual relations, bargained and agreed to by the Minnesota contracting parties, should not change. (Footnote omitted.) *Dairyland*, 41 Wn. App. at 32.

In contrast to the facts of *Dairyland*, *Bush* concerned the issue of whether the cap on economic damages as set forth in the tort reform act of 1986, Laws of 1986, ch. 305, established a cap on a tortfeasor's maximum liability arising out of an automobile accident that occurred in Florida. The court, while recognizing that contract choice of law rules apply to interpreting the terms of a contract, characterized the matter before it as one of substantive tort liability, and therefore looked to tort choice of law principles to decide whether to apply Washington or Florida rules. *Bush*, 58 Wn. App. at 146-47 (citing *Dairyland*, 41 Wn. App. at 31).

The rationale of *Dairyland* is apt here. Washington's *contract* choice of law rules make California the place of most significant contacts, as the Potters' relationship to their insurance company was initially formed in California; the policy refers to California law and to the California Insurance Code; the insured vehicle was licensed and registered in California; at the time of the accident, Mr. Potter was driving with a California driver's license; and the vehicle possessed a California "disabled person" license plate and sticker. In addition, the record contains a letter from Edora Potter to her insurance company in which she notes California as her permanent residence. Although none of these facts individually are necessarily dispositive, taken together they indicate that the application of the contract's terms, and of California's approach, would not violate the insureds' expectations. This conclusion finds support in the express language of the contract, and in the Washington Supreme Court's recognition that parties may elect to waive the protection the statute affords: "The statute does not impose an absolute duty to provide UIM coverage." *Johnson v. Farmers Ins. Co.*, 117 Wn.2d 558, 575, 817 P.2d 841 (1991). *See also Clements v. Travelers Indem. Co.*, 63 Wn. App. 541, 546, 821 P.2d 517 (1991) (citing

*Progressive Cas. Ins. Co. v. Jester,* 102 Wn.2d 78, 683 P.2d 180 (1984)), *review granted,* 118 Wn.2d 1027 (1992). *See also Clements v. Travelers Indem. Co.,* 63 Wn. App. at 545 (a court's duty in construing an insurance statute is to ascertain the intent of the parties at the time of contracting) (citing *Weir v. American Motorists Ins. Co.,* 63 Wn. App. 187, 192, 816 P.2d 1278 (1991); *Eurick v. PEMCO Ins. Co.,* 108 Wn.2d 338, 340, 738 P.2d 251 (1987)). MacDonald maintains that even if contract rather than tort choice of law rules apply, Washington law controls because the Potters spent 6 months of 1988 in Washington; resided in Washington beginning approximately in March 1989 until their deaths in August 1989; and had they lived, would have spent 7 months in Washington that year. These factors, even if conclusively established in the record, are not sufficiently weighty to alter our analysis here. Neither is the fact that in 1989 the Potters signed their respective wills and a community property agreement in Washington. We are likewise unpersuaded by MacDonald's last assertion that Washington law should apply because the Potters sent their renewal premiums from Washington. Not only does the record fail to establish this, but we are reluctant to impose Washington law on this contract absent any indication in the record that West American received notice that the Potters had changed their residence.

For the reasons developed above, we conclude that the trial court did not err in giving effect to the contract's express terms, which coincide with California's approach to defining underinsured. The judgment of the trial court is affirmed.

PEKELIS and FORREST, JJ., concur.