[No. 32915-4-I.    Division One.    November 21, 1994.]

MELVIN G. CORLEY, ET AL, *Respondents*, v. THE HERTZ CORPORATION, ET AL, *Appellants*.

*E. Pennock Gheen, Robert Joseph Roche,* and *Bullivant Houser Bailey Pendergrass & Hoffman; Harold Roland Hofstedt, Ronald Stanford Dinning,* and *Merrick Hofstedt & Lindsey, P.S.,* for appellants.

*Maria S. Diamond, Ronald J. Bland,* and *Levinson Friedman Vhugen Duggan & Bland,* for respondents.

GROSSE, J. — Hertz Corporation and H.A.S. Corporation appeal the summary judgment in favor of Melvin and Lucy Corley (hereafter Corley). The judgment declared that, as a matter of law, Hertz and H.A.S. must provide underinsured motorist (UIM) coverage with policy limits of $500,000 to Corley under the agreement by which Melvin Corley rented the automobile he was driving when he was involved in a

collision.[1] We affirm, holding that the trial court did not err in concluding that: (1) venue was proper in Washington, not Colorado; (2) Washington law rather than Colorado law applied; (3) Corley did not reject UIM coverage; and (4) Hertz was obligated to provide UIM coverage with liability limits of $500,000 rather than the statutory minimum limits.

In February 1991, Melvin Corley sustained serious injuries in an automobile accident which occurred in King County. Corley was driving an automobile he had rented in Spokane from H.A.S. Corporation, a licensee of Hertz Corporation. The automobile was registered and licensed in Washington. Corley was a resident of Colorado and employed in Colorado by U.S. West. Corley had $100,000 of UIM coverage. The at-fault driver had $50,000 of liability insurance.

The rental agreement between Hertz and Corley contained the following provision:

> Hertz will indemnify, hold harmless, and defend You and any Authorized Operators FROM AND AGAINST LIABILITY TO THIRD PARTIES, EXCLUDING ANY OF YOUR OR ANY AUTHORIZED OPERATOR'S FAMILY MEMBERS RELATED BY BLOOD, MARRIAGE OR ADOPTION RESIDING WITH YOU OR THEM. For bodily injury and property damage the limits of this protection, including owner's liability, are the same as the minimum limits required by the automobile financial responsibility law of the jurisdiction in which the accident occurred, unless higher limits apply for the CDP-ID number/ Rate Plan shown on the Front, which accident results from the use of the Car as permitted by this Agreement. This will conform to the basic requirements of any applicable "No Fault" law BUT DOES NOT INCLUDE "UNINSURED MOTORIST", "UNDERINSURED MOTORIST", "SUPPLEMENTARY NO FAULT" OR ANY OTHER OPTIONAL COVERAGE. TO THE EXTENT PERMITTED BY LAW, HERTZ AND YOU HEREBY REJECT THE INCLUSION OF ANY SUCH COVERAGE. In the event that any such coverage is imposed by operation of law, then the limits of such coverage will be the minimum required by the law of the jurisdiction in which the accident occurred. Hertz warrants that the protection described in this paragraph is primary with respect to any insurance coverage You or an Authorized Operator may have. THIS PROTECTION IS VOID IN MEXICO.

The CDP-ID number/Rate Plan referred to in the foregoing provision of the rental agreement is the "Agreement for

---

[1]Hereafter, Hertz and H.A.S. will be collectively referred to as "Hertz".

Vehicle Rental Services Between U.S. West Companies and Hertz Corporation" (Clerk's Papers, at 70) for the provision of vehicle rental services by Hertz to employees of U.S. West.[2] The U.S. West agreement provided liability limits as follows: ·

> Notwithstanding any contrary provisions of the rental agreement, [Hertz] shall, at its own cost and expense provide all [U.S. West's] travelers worldwide, primary coverage under an automobile liability insurance covering death or bodily injury to persons and property damage with combined single limits of $500,000 for each such occurrence arising out of the use, maintenance, condition or operation of any vehicle.

Corley filed an action in Washington against Hertz seeking a declaratory judgment that he was entitled to UIM coverage of at least $500,000 under the rental agreement. Hertz, H.A.S., and Corley filed motions for summary judgment. The trial court granted Corley's motion and, applying Washington law, declared that Hertz was required as a matter of law to provide UIM coverage under the rental agreement to Corley with liability limits of $500,000.

## I

█ Hertz contends that pursuant to article 33 of the U.S. West agreement, proper venue for Corley's action is Colorado and Colorado law applies to the claim.[3] We disagree. Article 33 of the U.S. West agreement is not incorporated into the rental agreement. Rather, the rental agreement incorporates the liability limits of the U.S. West agreement and nothing more. The sole reference in the rental agreement to the U.S. West agreement is the provision, set forth above, adopting the higher liability limits in the CDP-ID number/Rate Plan as the liability limits under the rental agreement. Nor is

---

[2]Hereafter, the agreement between Hertz and U.S. West will be referred to as the "U.S. West agreement"; the agreement between Corley and Hertz will be referred to as the "rental agreement".

[3]Article 33 provides: "The construction and interpretation of this Agreement shall be governed by, and construed in accordance with the laws of the State of Colorado. Venue and adjudication shall be in Denver, Colorado." As used in article 33, "this agreement" means the U.S. West agreement, not the rental agreement.

incorporation of the entire U.S. West agreement necessary to the creation or viability of an insured/insurer relationship between Hertz and Corley because the rental agreement is a stand-alone policy of motor vehicle liability insurance. *Van Vonno v. Hertz Corp.*, 120 Wn.2d 416, 425, 841 P.2d 1244 (1992).

▪ Because article 33 of the U.S. West agreement does not apply to this dispute and because the rental agreement is silent on the issue, the proper choice of law is determined by applying the "most significant relationship" test. *West Am. Ins. Co. v. MacDonald*, 68 Wn. App. 191, 194-95, 841 P.2d 1313 (1992) ("For any issue the law of choice will be that of the state with the most significant relationship to the issue in question. . . . The contacts are to be evaluated according to their relative importance to the practical issues being examined.") In the instant case, the rental agreement between Corley and Hertz was entered into in Washington. The leased automobile involved in the accident was licensed and registered in Washington. The accident occurred in Washington. We find that these factors are highly important to the issues presented and establish Washington as the state with the most significant relationship to the issues presented. The trial court did not err by determining that Washington law applied.[4]

▪ For the same reasons, the trial court did not err by determining that Washington was the proper forum in which to litigate Corley's claim. The accident occurred in Washington and involved a contract of insurance executed in Washington by a party doing business in Washington. The action

---

[4]Even if article 33 of the U.S. West agreement were incorporated into the rental agreement, we would still apply Washington law and decline to give effect to the choice of law provision. Application of Colorado law would effectively circumvent Washington's clear policy in favor of providing broad UIM protection. *See, e.g., Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 251, 850 P.2d 1298 (1993) (the UIM statute must be liberally construed so as to provide broad protection against financially irresponsible motorists). A choice of law clause will not be enforced if application of the law of the chosen state would be contrary to a fundamental policy of the forum state. *O'Brien v. Shearson Hayden Stone, Inc.*, 90 Wn.2d 680, 685, 586 P.2d 830 (1978); *Truck Ctr. Corp. v. General Motors Corp.*, 67 Wn. App. 539, 544 n.3, 837 P.2d 631 (1992).

was properly governed by Washington law and Washington was the proper forum. *Mangham v. Gold Seal Chinchillas, Inc.*, 69 Wn.2d 37, 416 P.2d 680 (1966); *Exum v. Vantage Press, Inc.*, 17 Wn. App. 477, 563 P.2d 1314 (1977).

## II

Hertz contends Corley rejected UIM coverage by signing the rental agreement containing the provision, set forth above, which provided: "TO THE EXTENT PERMITTED BY LAW, HERTZ AND YOU [THE LESSEE] HEREBY REJECT THE INCLUSION OF ANY SUCH [UIM] COVERAGE." We disagree with Hertz's contention, holding that Corley did not specifically and unequivocally reject UIM coverage and that such coverage was therefore mandatory.

Washington's UIM statute, RCW 48.22.030, requires insurers to make UIM coverage available to Washington policyholders. *Clements*, 121 Wn.2d at 250. Pursuant to RCW 48.22.030(4), an insured may reject UIM coverage "in writing".[5] In *Clements*, the Supreme Court determined that the wording of RCW 48.22.030(4) evinced a legislative intent that an insured decline UIM coverage in writing by "an affirmative and conscious act". *Clements*, 121 Wn.2d at 254.[6] In *Clements*, the court held that the mere absence of UIM coverage in a policy may not be treated as a written rejection of that coverage. *Clements*, 121 Wn.2d at 255. To hold otherwise, the court reasoned, would be to render the Legisla-

---

[5]"A named insured or spouse may reject, in writing, underinsured coverage for bodily injury or death, or property damage, and the requirements of subsections (2) and (3) of this section shall not apply." RCW 48.22.030(4).

[6]*See also Johnson v. Farmers Ins. Co.*, 117 Wn.2d 558, 562, 817 P.2d 841 (1991) ("The insurer must initially include UIM coverage in the insured's policy and cannot eliminate the option without an express written request on the part of the insured to decline all or part of the coverage."); *Weir v. American Motorists Ins. Co.*, 63 Wn. App. 187, 190, 816 P.2d 1278 (1991) (the rejection of UIM coverage "must be specific and unequivocal"); *Dairyland Ins. Co. v. Uhls*, 41 Wn. App. 49, 53, 702 P.2d 1214 (1985) (UIM coverage is mandatory unless the insured specifically and unequivocally rejects it).

ture's "bright line" statutory written rejection requirement completely meaningless.[7]

Here, Corley did not reject UIM coverage by an affirmative and conscious act. In fact, he was not even given the option of rejecting such coverage, but rather had no choice but to reject it in order to enter into the rental agreement with Hertz. The requirement that an insured reject UIM coverage by an affirmative and conscious act necessarily implies that the insured is given a choice between rejecting or accepting UIM coverage. Only if an insured is given a choice between these options can it be said that the insured affirmatively and consciously rejected UIM coverage by choosing between the two options. We conclude that Corley's signing a rental agreement containing the clause, "HERTZ AND YOU [THE LESSEE] HEREBY REJECT THE INCLUSION OF ANY SUCH COVERAGE" did not constitute an affirmative, conscious, specific, or unequivocal rejection of UIM coverage, and was therefore not a valid waiver. Consequently, UIM coverage became part of the contract of insurance between Corley and Hertz. *Clements*, 121 Wn.2d at 255.

We agree with the trial court's finding that Hertz is required to provide UIM coverage with limits of $500,000, the liability limits contained in the U.S. West agreement. As discussed above, the rental agreement specifically incorporated any higher liability limits contained in the "CDP-ID number/Rate Plan" shown on the front of the rental agreement. It is undisputed that the CDP-ID number/Rate Plan shown on the front of the rental agreement between Corley and Hertz referred to the U.S. West agreement and that the liability limit for bodily injury and property damage con-

---

[7]*See also Van Vonno v. Hertz Corp., supra*, where the court applied Oregon's UIM statute, which it found to be nearly identical to Washington's, and held that in order to effectively "offer" UIM coverage, insurers must provide their insureds "an affirmative choice". *Van Vonno*, 120 Wn.2d at 420. The court noted that the rigorous definition of "offer" was consistent with the purpose of both Oregon's and Washington's UIM legislation, which is to protect innocent victims of vehicular accidents by holding insurers to strict compliance with the UIM statutes.

tained in that agreement was $500,000. UIM coverage must be in the same amount as the insured's third party liability coverage. RCW 48.22.030(3). Accordingly, Corley was entitled to UIM coverage with limits of $500,000.

Finally, Corley requests an award of attorney fees pursuant to *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).[8] Although he prayed for an award of attorney fees in his complaint, Corley failed to argue the issue of his entitlement to such an award before the trial court, and no award of attorney fees is included in the summary judgment entered in Corley's favor.

The court in *Olympic S.S.* ruled:

> [A]n award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue.

*Olympic S.S.*, 117 Wn.2d at 53.

Given the rule in *Olympic S.S.*, and given the fact that Corley complied with RAP 18.1, we are constrained to award Corley attorney fees on appeal even though he failed to raise the issue of his entitlement to fees before the trial court. Our holding goes no further than the facts of the instant case and should not be read as holding that, in every case where the theory under which attorney fees are requested is not raised before the trial court, the party requesting the fees may be awarded fees on appeal.[9]

The summary judgment in favor of Corley is affirmed.

BAKER, A.C.J., and WEBSTER, J., concur.

Review denied at 128 Wn.2d 1007 (1996).

---

[8]Corley fails to identify whether his request for attorney fees encompasses fees incurred at trial, on appeal, or both. We interpret his request to be solely for attorney fees on appeal.

[9]Cases in which this court awards attorney fees under RAP 18.9 as a sanction for the pursuit of a frivolous claim or defense or for the abuse of appellate court rules and procedures do not, of course, implicate the same principles concerning raising issues for the first time on appeal as do cases in which fees are awarded pursuant to a statute, contract, or recognized ground of equity.