# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-3355

DAVITA CARTER,

*Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 00 C 4036—**Joe Billy McDade,** *Chief Judge.*

ARGUED FEBRUARY 20, 2003—DECIDED JUNE 24, 2003

Before BAUER, POSNER, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* Surgery at Bethesda Naval Hospital in Maryland to correct 11-year-old Davita Carter's severe scoliosis (curvature) of the spine left her a paraplegic and precipitated this suit for medical malpractice. Her father is a Marine veteran, and his veterans' benefits entitled his daughter to treatment at the government's expense. Bethesda Naval Hospital is of course a federal hospital, and so the suit is under the Federal Tort Claims Act.

The Act authorizes suit in the judicial district where the plaintiff lives or the alleged tort occurred. 28 U.S.C.

§ 1402(b). The plaintiff lives in the Central District of Illinois, and that is where the suit was filed, the alternative venue being of course the District of Maryland. The district judge granted summary judgment for the plaintiff on liability and then conducted a bench trial on damages that resulted in his finding that the plaintiff had sustained $3.4 million in economic damages (past and future medical expenses plus lost future earnings) and another $15.5 million in noneconomic damages (permanent disability, disfigurement, physical and emotional pain and suffering, and loss of enjoyment of life). But the judge reduced the award for noneconomic damages to $530,000, the maximum allowed under Maryland law. The plaintiff appeals that ruling. Neither she nor the government challenges the award of $3.4 million in noneconomic damages and upon the request of both parties we entered a partial final judgment in the plaintiff's favor for that amount. *Barnes v. United States*, 678 F.2d 10, 11-13 (3d Cir. 1982); *Dempsey v. United States*, 32 F.3d 1490, 1497-98 (11th Cir. 1994) (per curiam) (concurring opinion).

It is curious, though, that a judgment by *any* court should be thought necessary when the government not only acknowledges that it owes the plaintiff the $3.4 million in economic damages that the district court awarded but wants to pay the money promptly. For mysterious bureaucratic reasons, however, the government would not pay this amount that it acknowledges owing without our affirming the part of the district court's judgment that covers that amount. The reasons are especially mysterious because the filing of an appeal by the prevailing party does not stay the judgment in his favor unless he is seeking to change the form of the relief that he obtained in the district court (for example, from damages to specific performance) rather than, as in this case, merely seeking more of the same. *BASF Corp. v. Old World Trading Co.*, 979

F.2d 615, 616-17 (7th Cir. 1992); *Trustmark Ins. Co. v. Gallucci*, 193 F.3d 558, 558-59 (1st Cir. 1999) (per curiam); *Enserch Corp. v. Shand Morahan & Co.*, 918 F.2d 462, 464 n. 3 (5th Cir. 1990); contra, *Tennessee Valley Authority v. Atlas Machine & Iron Works, Inc.*, 803 F.2d 794, 797 (4th Cir. 1986). But having entered the requested judgment we need not pursue the issue of its necessity further.

The Federal Tort Claims Act authorizes the imposition of tort liability on the federal government "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). That place was Maryland, and a statute of Maryland imposes a cap on noneconomic damages of $530,000. Md. Code, Cts. & Jud. Proc. § 11-108(b)(2). The Supreme Court has held, however, that the reference in the Tort Claims Act to "the law of the place where the act or omission occurred" is a reference to the entire law of the place, including its conflict of laws principles, *Richards v. United States*, 369 U.S. 1, 10-13 (1962), and the plaintiff in our case argues that Maryland conflict of laws principles would look to Illinois law to supply the rule of decision on damages-related issues—and Illinois does not have a cap on noneconomic damages.

If Maryland followed the maddeningly indefinite "interest-balancing" approach to conflicts issues, it conceivably might decide that Illinois, as the place of residence of the plaintiff (not as the forum state—for a reason that will become apparent shortly), should furnish the rule of decision with respect to issues of damages as distinct from issues of liability. See, e.g., *Miller v. Miller*, 237 N.E.2d 877, 878-80 (N.Y. 1968). But Maryland does not follow such an approach; it adheres to the old-fashioned conflicts principle of "*lex loci delicti*," whereby the law of the

place where the tort occurred (the English translation of the Latin phrase), Maryland in this case, supplies the rule of decision on all substantive issues. *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 230-31 (Md. 2000); *Hauch v. Connor*, 453 A.2d 1207, 1209 (Md. 1983). But is a damages cap procedural or substantive for this purpose? It is the latter, according to Maryland's intermediate appellate court. *Black v. Leatherwood Motor Coach Corp.*, 606 A.2d 295, 300-01 (Md. App. 1992); *Naughton v. Bankier*, 691 A.2d 712, 716 (Md. App. 1997); see also *Houben v. Telular Corp.*, 309 F.3d 1028, 1035 (7th Cir. 2002); *Bush v. O'Connor*, 791 P.2d 915, 919 (Wash. App. 1990). This is sensible, because a cap on damages reflects a judgment about the severity of the sanction appropriate to regulate the activity of potential injurers.

But even if Maryland's highest court, which has not yet addressed the issue, would disagree and hold that a damages cap was procedural, the plaintiff could not prevail. Her argument is that since Illinois is the forum state, Illinois' procedural law should govern under Maryland conflicts principles, which make the law of the forum controlling on procedural issues. E.g., *Black v. Leatherwood Motor Coach Corp., supra*, 606 A.2d at 300; see also *Shaps v. Provident Life & Accident Ins. Co.*, 826 So. 2d 250, 254 n. 3 (Fla. 2002); *Nebraska Nutrients, Inc. v. Shepherd*, 626 N.W.2d 472, 517 (Neb. 2001). The argument founders on the fact that Illinois, though it is the state in which the federal district court in which the plaintiff sued is located, is not a forum state for purposes of conflicts analysis under the Tort Claims Act. And on the further fact that the reference in 28 U.S.C. § 1346(b) to "*the law* of the place where the act or omission occurred" is to the substantive law (broadly understood to include remedial law, such as the damages cap, as well as, of course, the conflict of laws rules) of the state where the act or omission

occurred, see *Jackson v. United States*, 881 F.2d 707, 711-12 (9th Cir. 1989), since the court one sues in will apply its usual procedures even if it is required by conflicts principles to apply the substantive law of a foreign state. The court that the plaintiff sued in was a federal court, not an Illinois state court, and the procedures it applies are federal, not state, procedures, regardless of the source of the substantive rules in the case. This has been the law since 1938, when the Federal Rules of Civil Procedure superseded the Conformity Act, under which federal courts had conformed their procedures to those of the state in which the court was located. See, e.g., *Houben v. Telular Corp., supra*, 309 F.3d at 1032; *Odekirk v. Sears Roebuck & Co.*, 274 F.2d 441, 445 (7th Cir. 1960).

So even if Maryland would regard a damages cap as a procedural rule (the federal courts certainly would not, *Houben v. Telular Corp., supra*, 309 F.3d at 1035), it is not a *federal* procedural rule and so it did not bind the federal district court in this case. E.g., *Jastremski v. United States*, 737 F.2d 666, 672 (7th Cir. 1984); *Jackson v. United States, supra*, 881 F.2d at 712. Maryland could not require a federal district court to jettison federal in favor of state procedural law if it wanted to, and there is no evidence it wants to.

But like most states Maryland has a "public policy" exception to its usual conflicts rules, whereby a court in the forum state will decline to enforce a foreign state's rule of law if that rule would offend the public policy of the forum state. *Black v. Leatherwood Motor Coach Corp., supra*, 606 A.2d at 302-03; *Hartford Mutual Ins. Co. v. Bruchey*, 238 A.2d 115, 117-18 (Md. 1968). The plaintiff argues that Maryland would defer to Illinois law in regard to damages caps, not because Illinois lacks such caps but because the Illinois constitution has been interpreted by the

Illinois courts to forbid such caps, *Best v. Taylor Machine Works*, 689 N.E.2d 1057, 1069-81 (Ill. 1997), thus indicating that they are indeed offensive to the public policy of Illinois—that their omission from Illinois law is not merely an accident. This argument does not depend on the implausible classification of a damages cap as a procedural rule, and so is less vulnerable to the counterargument that Illinois is not the forum state in a federal suit. Illinois is the place where the suit was brought, and if Maryland thinks that the public policy of the place where a suit is brought is a trump, we would be bound because Maryland conflicts principles are controlling in this case.

But Maryland does not think this. The plaintiff has got Maryland law backwards. When a suit brought in Maryland arises out of a tort in another state, the court will decline to enforce a provision of the law of that other state that offends Maryland public policy. In this way Maryland protects its own policies. If the suit is brought in another state but the substantive law applicable is that of Maryland, Maryland would subvert rather than protect its own policies by a rule that directed the forum court to disregard a provision of Maryland law. It has no such rule.

The plaintiff argues that since she is a nonresident of Maryland and Bethesda Naval Hospital is a federal institution rather than a private or Maryland state hospital, Maryland has no interest in enforcing its damages cap. The fact that the plaintiff is not a Maryland resident does not bear on the issue because the damages cap is for the protection of defendants rather than plaintiffs. And the fact that the defendant is a federal institution is inadmissible because the federal government has consented to having tort liability imposed on it only "to the same extent as a private individual under like circumstances." 28 U.S.C § 2674. This requires us to treat Bethesda Naval

Hospital like any nonfederal hospital in Maryland. *Carter v. United States*, 982 F.2d 1141, 1143-44 (7th Cir. 1992); *Knowles v. United States*, 91 F.3d 1147, 1150 (8th Cir. 1996); *Owen v. United States*, 935 F.2d 734, 737-38 (5th Cir. 1991); *Starns v. United States*, 923 F.2d 34, 37 (4th Cir. 1991).

The plaintiff has a further argument—that even if the damages cap applies to her case the government has forfeited its application, either by failing to plead the cap as an affirmative defense in a timely manner (that is to say, in the answer to the complaint) or by operation of the doctrine of equitable estoppel. Regarding the second ground, equitable estoppel, it has been reasonably clear ever since *Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990), and *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95-96 (1990), discussed in *Goodhand v. United States*, 40 F.3d 209, 213-14 (7th Cir. 1994), that while the federal government cannot be estopped by the representations of a federal employee to refuse to make a disbursement that violates a federal statute—otherwise employees of the executive branch could usurp Congress's authority over government expenditures—it can be estopped to plead defenses in lawsuits, such as the statute of limitations in *Irwin* and *Goodhand*, or, we add today, a partial defense limiting damages; otherwise it would be impossible to litigate against the government because none of its tactical decisions in litigation would be binding on it.

The plaintiff filed her complaint in March of 2000 and the government's answer, which did not mention the damages cap, was filed in May. Eventually the plaintiff learned that the government planned to invoke the cap, and in November of 2001, about six weeks before the trial on damages, she asked the judge to rule that the cap was inapplicable, and he declined. The government argues

that a limitation on damages is not an affirmative defense and therefore need not, as required by Fed. R. Civ. P. 8(c) in the case of such defenses, be pleaded in the answer. The cases are divided on the question. Compare *Taylor v. United States*, 821 F.2d 1428, 1433 (9th Cir. 1987) (no), with *Simon v. United States*, 891 F.2d 1154, 1157 (5th Cir. 1990) (yes), and *Jakobsen v. Massachusetts Port Authority*, 520 F.2d 810, 813 (1st Cir. 1975) (also yes). A cap on damages is only a partial defense, but that is true of any defense that is limited to the amount of damages, and in that respect it is no different from comparative negligence, which clearly is an affirmative defense. *A.D.E. Inc. v. Louis Joliet Bank & Trust Co.*, 742 F.2d 395, 397 (7th Cir. 1984); *Marino v. Otis Engineering Corp.*, 839 F.2d 1404, 1406 n. 3 (10th Cir. 1988). The argument against treating a cap on damages as an affirmative defense is that it is contingent on the amount of damages sought, which the plaintiff is not required to set forth in his complaint.

We need not resolve the conflict. The failure to plead an affirmative defense in the answer works a forfeiture only if the plaintiff is harmed by the defendant's delay in asserting it, *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000); see also *Dresser Industries, Inc. v. Pyrrhus AG*, 936 F.2d 921, 928 (7th Cir. 1991); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 334 (7th Cir. 1987), and there was no harm here. There might be harm in a case such as this if for example a plaintiff had some leeway in classifying damages as economic rather than noneconomic, or if knowledge that noneconomic damages were unavailable would have induced her to devote less effort to proving up such damages and more to proving her economic damages. *Simon v. United States, supra*, 891 F.2d at 1157; *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987). This by

the way is a powerful argument for regarding a damages cap as an affirmative defense.

Neither form of harm is argued here, but what *is* argued is that had the plaintiff known earlier what was coming she would have devoted additional efforts to developing her alternative ground for beating the cap, namely equitable estoppel. If no federal hospital in her area had the expertise necessary to treat her condition—and none did—she would have been entitled to obtain that treatment at a nonfederal hospital at the government's expense. See 32 C.F.R. §§ 199.4(a)(1), (9), (10); *Dempsey v. United States, supra*, 32 F.3d at 1493-94. She contends that the government failed to advise her parents of this option, instead steering her to Bethesda though her parents would have much preferred a local private hospital and there was one with the necessary expertise. Had she been operated on locally with the same unfortunate result and had sued, she would not have encountered Maryland's damages cap. Even so, she has no defense, and not for a reason that a further factual inquiry might dispel.

If the government violated a legal duty to her by failing to advise her parents of the local-treatment option, she conceivably may have a remedy of some sort; but the violation, if it occurred (which we do not decide), cannot operate to defeat the damages cap. No facts that might have emerged had the government flagged its reliance on the cap earlier would affect this conclusion—even the plaintiff's lurid and highly improbable speculation that the government steered her to Bethesda in order to limit its potential liability for noneconomic damages should the operation be conducted negligently and thus give rise to this suit. An injury resulting from the violation of a statute (or other source of a legal duty, such as the regulation concerning treatment options on which the plain-

tiff relies) is actionable under tort law only if the statute was intended to avert the kind of injury that occurred. In the leading case of *Gorris v. Scott*, 9 L.R.-Ex. 125 (1874), a hardy antique, the plaintiff's animals, while being transported on the defendant's ship, were washed overboard and drowned when a storm struck it. The ship was not equipped with pens that were required by a statute in order to prevent the spread of disease among the animals. Had there been pens, the animals would have been saved from a watery death. The suit for their loss was based on the statutory violation and failed because the statute was not aimed at preventing animals from being washed overboard. (To similar effect see *Atlantic Mutual Ins. Co. v. Kenney*, 591 A.2d 507, 510-11 (Md. 1991); *Pahanish v. Western Trails, Inc.*, 517 A.2d 1122, 1132 (Md. App. 1986); *Israel Travel Advisory Service, Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1258 (7th Cir. 1995); *Jack Walters & Sons Corp. v. Morton Building, Inc.*, 737 F.2d 698, 708-09 (7th Cir. 1984); *Abrahams v. Young & Rubicam Inc.*, 79 F.3d 234, 237 (2d Cir. 1996); W. Page Keeton *et al.*, *Prosser & Keeton on the Law of Torts*, § 36, pp. 222-25 (5th ed. 1984)). It is the same here. The regulation concerning notice of treatment options that the government is alleged to have violated has nothing to do with a loss of damages resulting from the existence of a statutory cap. Had the regulation been complied with, it would, we may assume, have prevented the cap from attaching, just as the statute in *Gorris* if complied with would have saved the animals. But in neither case was (is) this enough, because of the mismatch between the purpose of the statute or regulation and the nature of the injury that compliance might have prevented.

AFFIRMED.

No. 02-3355                                                    11

A true Copy:

     Teste:

                                    _____
                                 *Clerk of the United States Court of*
                                   *Appeals for the Seventh Circuit*